BRENDA K. BAUMGART, OSB No. 992160
brenda.baumgart@stoel.com
TOM R. JOHNSON, OSB No. 010645
tom.johnson@stoel.com
SOPHIE SHADDY-FARNSWORTH, OSB No. 205180
sophie.shaddy-farnsworth@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TYREL BEERY, an Individual, MICHELLE LIEBE, an Individual, JENNIFER (RUBY) CHAVEZ, an Individual, ELIZABETH TARRIES, an Individual,<br><br>        Plaintiffs,<br><br>  v.<br><br>OREGON HEALTH AND SCIENCE UNIVERSITY, an independent public corporation,<br><br>        Defendant. | Case No.: 3:23-cv-01555-JR<br><br>**DECLARATION OF SOPHIE SHADDY-FARNSWORTH IN SUPPORT OF DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES** |

I, Sophie Shaddy-Farnsworth, do hereby declare and say:

1.      I am an attorney licensed to practice law in the state of Oregon and one of the attorneys representing Defendant Oregon Health and Science University ("OHSU") in the above-captioned matter. I make this declaration based on my own personal knowledge.

2.      Attached as **Exhibit A** is a detailed description of the tasks performed in

connection with OHSU's Motion to Compel Discovery and for Sanctions (the "Motion") and

OHSU's Motion for Award of Attorney Fees (the "Attorney Fees Motion"), along with the

person who performed the task, the time it took to perform the task, and the value of that time.

The calculation of fees in Exhibit A reflects the rates that were the normal and customary rates

of the persons listed at the time the work was performed. Each task performed was performed

in connection with the Motion or the Attorney Fees Motion. Each task was performed at the

level most efficient and economical for the task. OHSU's counsel acted reasonably in the

quantity of time devoted to the tasks itemized in Exhibit A, and the fees incurred reflect

thoughtful staffing and a careful division of work between timekeepers at different experience

levels to maximize efficiency. The fees also reflect the unusual backdrop against which OHSU

filed the Motion – namely, that Plaintiffs' counsel represents dozens of other former employees

in COVID-19 vaccine cases against OHSU and another hospital system, and engaged in the

conduct described in the Motion in both this case and several others. Accordingly, to ensure

that OHSU presented a complete picture to the Court, it was necessary for defense counsel to

review the entire course of events in the relevant cases.

     3.     The following is a summary of the time entry description in Exhibit A:

| Name | Position | Current Rate | Fees |
|---|---|---|---|
| Brenda K. Baumgart | Partner | $729.00 | $1,676.70 |
| Karen L. O'Connor | Partner | $729.00 | $437.40 |
| Sophie Shaddy-Farnsworth | Associate | $427.50[1] | $7,290.00 |
| Angela M. Gifford | Paralegal | $346.50 | $415.80 |
| Darise Holland | Paralegal | $328.50 | $2,430.90 |

---

[1] Before December 1, 2024, the hourly rate for Ms. Shaddy-Farnsworth was $360.00. This table includes hours worked at both the previous and current rates (which went into effect on December 1, 2024), and the fees charged reflect work using both rates.

Page 2 – DECLARATION OF SOPHIE SHADDY-FARNSWORTH IN SUPPORT OF DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES

4.      OHSU's fees associated with preparing its Attorney Fees Motion to date are included in Exhibit A. Additional fees will be incurred for subsequent briefing and argument, if any.

5.      Brenda K. Baumgart is the lead attorney in this matter and is the Practice Group Leader for Stoel Rives' Labor & Employment Group. Ms. Baumgart received her B.A. from Willamette University in 1995 and her J.D. from Willamette University College of Law in 1999. She was admitted to the Oregon State Bar in 1999 and is also a member of the U.S. District Court for the District of Oregon; the Fifth, Eighth, and Ninth Circuit Courts of Appeals; and the Supreme Court of the United States. Ms. Baumgart has maintained an active litigation practice for more than 25 years and has been recognized as an Oregon Rising Star in "Employment Litigation," listed as an Oregon Super Lawyer in "Employment Litigation: Defense," selected by Chambers USA as one of "America's Leading Lawyers for Business" in Oregon in Labor and Employment, and included in The Best Lawyers in America in "Employment Law." Ms. Baumgart's time was billed at $729.00 per hour. She spent a total of 1.9 hours on OHSU's Motion and .4 hours on OHSU's Attorney Fees Motion.

6.      Karen L. O'Connor is a partner in Stoel Rives' Labor & Employment Group. Ms. O'Connor received her B.A. from Mt. Holyoke College in 1988 and her J.D. from the University of Oregon School of Law, in 1995. She was admitted to the Oregon State Bar in 1995 and is also a member of the U.S. District Court for the District of Oregon and the Western District of Washington. Before joining Stoel Rives, Ms. O'Connor worked as a law clerk for District Judge Malcolm F. Marsh of the U.S. District Court for the District of Oregon. Ms. O'Connor has been licensed to practice law for 30 years and has maintained an active litigation practice for more than 27 years. She has been listed as an Oregon Super Lawyer in

"Employment Litigation: Defense, Employment & Labor," selected by Chambers USA as one of "America's Leading Lawyers for Business" in Oregon in Labor and Employment, included in The Best Lawyers in America in "Employment Law," selected as a "Labor & Employment Star" by Benchmark Litigation, and named as a "Women of Influence Award Winner" by the Portland Business Journal. Ms. O'Connor's time was billed at $729.00 per hour. She spent a total of .6 hours on OHSU's Motion.

7.      I received my B.A. from Lewis & Clark College in 2010 and my J.D. from Lewis & Clark Law School in 2020. I was admitted to the Oregon State Bar in 2020 and am also a member of the U.S. District Court for the District of Oregon and the Ninth Circuit Court of Appeals. Before joining Stoel Rives, I worked as a law clerk for Magistrate Judge Stacie F. Beckerman of the U.S. District Court for the District of Oregon. I joined Stoel Rives in 2021 and my practice focuses on litigation of labor and employment-related matters. My time was billed at $360.00 and $427.50 per hour. I spent a total of 10.5 hours on OHSU's Motion and 7 hours on OHSU's Attorney Fees Motion.

8.      Angela Gifford is a paralegal with more than 25 years of paralegal experience, including extensive experience in complex litigation matters. Ms. Gifford's time was billed at $346.50 per hour, and she spent a total of 1.2 hours assisting with OHSU's Motion.

9.      Darise Holland is a paralegal with 3 years of paralegal experience in complex litigation matters. Ms. Holland's time was billed at $328.50 per hour, and she spent a total of 7.4 hours assisting with OHSU's Motion.

10.     Attached as **Exhibit B** is a true and correct copy of excerpts from the 2022 Oregon State Bar Economic Survey.

11.     Attached as **Exhibit C** is a true and correct copy of the Morones Survey of

Commercial Litigation Fees—2024 Update.

12.     Attached as **Exhibit D** is a true and correct copy of excerpts from the 2024

ALM/IMPA Annual Compensation Survey for Paralegals, Practice Support Professionals, and

Managers.

13.     Attached as **Exhibit E** are true and correct copies of the following documents:

Legacy Health's Motion for Award of Attorney's Fees, *Matthews v. Legacy Health*, No. 6:24-

cv-00592-MC (D. Or. Jan. 24, 2025), and Order Re: Legacy Health's Fees Motion, *Matthews v.*

*Legacy Health*, No. 6:24-cv-00592-MC (D. Or. Mar. 26, 2025); Petition for Attorney Fees and

Costs, *Easterday Dairy, LLC v. Fall Line Cap., LLC*, No. 22-CV-19843 (Morrow Cnty. Cir. Ct.

Sept. 26, 2022), and Opinion Letter Re: Defendant Easterday's Request for Prevailing Party

Fee, Attorney Fees and Costs, *Easterday Dairy, LLC v. Fall Line Cap., LLC*, No. 22-CV-19843

(Morrow Cnty. Cir. Ct. Feb. 15, 2023); Farmers Defendants-Appellants' Petition for Attorneys'

Fees and Costs, *Mohabeer v. Farmers Ins. Exch.*, No. A172057 (Or. App. Apr. 6, 2022), and

Order Allowing Attorney Fees and Costs, *Mohabeer v. Farmers Ins. Exch.,* No. A172057 (Or.

App. Sept. 13, 2022); *SPF Brewery Blocks, LLC v. Art Inst. of Portland, LLC,* No. 3:18-CV-

1749-MO, 2019 WL 1497029, at *2 (D. Or. Apr. 4, 2019); *Schnitzer Steel Indus., Inc. v. Cont'l*

*Cas. Corp.,* No. 3:10-CV-01174-MO, 2014 WL 6063976, at *5-6 (D. Or. Nov. 12, 2014), *aff'd*

*sub nom. Schnitzer Steel Indus., Inc. v. Cont'l Cas. Co.*, Nos. 14-35793 & 15-35101, 2016 WL

3059067 (9th Cir. May 31, 2016)).)

        ///

        ///

        ///

        ///

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

DATED: May 6, 2025    STOEL RIVES LLP


*s/ Sophie Shaddy-Farnsworth*
SOPHIE SHADDY-FARNSWORTH, OSB No. 205180
sophie.shaddy-farnsworth@stoel.com

*Attorneys for Defendant*

| Date | Narrative | Timekeeper | Rate | Time | Value |
|---|---|---|---|---|---|
| | **Fees Associated with Motion to Compel Discovery and for Sanctions** | | | | |
| 10/25/2024 | Review correspondence from opposing counsel re further extension to respond to discovery requests (.1); outline response re same (.2) | MSS | $360.00 | 0.30 | $108.00 |
| 1/19/2025 | Review discovery deficiencies for multiple plaintiffs in ongoing discovery | DMH | $328.50 | 0.60 | $197.10 |
| 1/22/2025 | Review plaintiff's additional discovery documents for case assessment and development | DMH | $328.50 | 0.30 | $98.55 |
| 1/22/2025 | Review email correspondence from opposing counsel re discovery requests | MSS | $427.50 | 0.20 | $85.50 |
| 1/29/2025 | Evaluate plaintiff's deficient discovery and related strategy in outreach to court | BKB | $729.00 | 0.30 | $218.70 |
| 1/29/2025 | Evaluate potential motion to compel; email correspondence to opposing counsel summarizing discovery issues and next steps re seeking court intervention; email correspondence to court re same | MSS | $427.50 | 1.70 | $726.75 |
| 2/4/2025 | Review plaintiff's untimely discovery documents for case assessment and development | DMH | $328.50 | 0.50 | $164.25 |
| 2/5/2025 | Advise re discovery strategy and review court order re same | BKB | $729.00 | 0.20 | $145.80 |
| 2/7/2025 | Outline next steps re obtaining outstanding discovery from plaintiff and related correspondence | MSS | $427.50 | 0.50 | $213.75 |
| 3/2/2025 | Review plaintiff's discovery responses to identify key information received in ongoing discovery | DMH | $328.50 | 0.60 | $197.10 |
| 3/3/2025 | Brief review of plaintiff's late production and further evaluate discovery strategy, including relief from court | BKB | $729.00 | 0.30 | $218.70 |
| 3/3/2025 | Review plaintiff's discovery responses for missing production documents in ongoing discovery | DMH | $328.50 | 0.90 | $295.65 |
| 3/3/2025 | Review discovery responses and identify deficiencies in responses and production | MSS | $427.50 | 0.50 | $213.75 |
| 3/4/2025 | Correspondence with the court and evaluate go-forward strategy with Rule 41(b) motion and/or unilateral motion to extend discovery | BKB | $729.00 | 0.30 | $218.70 |
| 3/4/2025 | Review plaintiff Chavez discovery responses to identify key information for case assessment and development | DMH | $328.50 | 0.80 | $262.80 |
| 3/4/2025 | Draft email correspondence to court re timeline of discovery issues; evaluate potential motion to compel and begin outlining re same | MSS | $427.50 | 1.60 | $684.00 |
| 3/5/2025 | Evaluate discovery and motion to compel strategy and instruct re same | BKB | $729.00 | 0.20 | $145.80 |
| 3/11/2025 | Continue drafting motion to compel discovery and for sanctions | MSS | $427.50 | 2.10 | $897.75 |
| 3/13/2025 | Advise re motions and related correspondence | BKB | $729.00 | 0.30 | $218.70 |
| 3/13/2025 | Draft and revise Motion to Compel Discovery and for Sanctions; review and revise Declaration in Support; emails re same | KLO | $729.00 | 0.60 | $437.40 |
| 3/13/2025 | Draft and revise motion to compel and accompanying declaration | MSS | $427.50 | 2.40 | $1,026.00 |
| 3/14/2025 | Prepare exhibits for submission with motion to compel | DMH | $328.50 | 0.20 | $65.70 |
| 3/14/2025 | Incorporate revisions and finalize discovery motion and declaration for filing | MSS | $427.50 | 0.90 | $384.75 |
| 3/18/2025 | Review plaintiff's production received for Ellis and Brandt in ongoing discovery | DMH | $328.50 | 0.70 | $229.95 |
| 3/19/2025 | Further review of plaintiff Chevez production to identify key information in case assessment and development | DMH | $328.50 | 1.20 | $394.20 |
| 3/26/2025 | Review plaintiff's supplemental production for case assessment and development | DMH | $328.50 | 0.10 | $32.85 |
| 3/28/2025 | Review communication from plaintiffs' office re discovery and further evaluate go-forward strategy | BKB | $729.00 | 0.30 | $218.70 |
| 3/28/2025 | Review additional plaintiff responsive documents for Ellis Brandt, Chavez, Liebe for case assessment and development | DMH | $328.50 | 0.90 | $295.65 |
| 3/28/2025 | Email correspondence with opposing counsel re responses to discovery requests | MSS | $427.50 | 0.10 | $42.75 |

| Date | Description | | | | |
|------|-------------|---|---|---|---|
| 3/31/2025 | Review Liebe documents received from from Janzen firm | DMH | $328.50 | 0.60 | $197.10 |
| 3/31/2025 | Review and evaluate plaintiff's response to motion to compel | MSS | $427.50 | 0.20 | $85.50 |
| 4/9/2025 | Review production by plaintiff Chavez to identify missing information needed for case assessment and development (.8); summarize missing information needed from plaintiff Chavez for case assessment and development (.4) | AMG | $346.50 | 1.20 | $415.80 |
| **Fees Associated with Motion for Attorneys' Fees** | | | | | |
| 4/14/2025 | Review and evaluate time entries and fees billed toward obtaining outstanding discovery and preparing motion to compel to include in fee petition | MSS | $427.50 | 0.50 | $213.75 |
| 4/15/2025 | Further evaluate time entries for fee petition (.3); evaluate strategy re upcoming conferral with opposing counsel re motion for attorneys fees (.2) | MSS | $427.50 | 0.50 | $213.75 |
| 4/18/2025 | Confer with opposing counsel re motion for fees | MSS | $427.50 | 0.20 | $85.50 |
| 4/24/2025 | Review invoices to prepare for required conferral with opposing counsel re fee award | BKB | $729.00 | 0.40 | $291.60 |
| 4/27/2025 | Advise re revisions needed to billing narratives for motion for fees | MSS | $427.50 | 0.20 | $85.50 |
| 4/28/2025 | Begin outlining motion for award of attorneys' fees | MSS | $427.50 | 0.50 | $213.75 |
| 4/29/2025 | Begin drafting motion for award of attorneys' fees | MSS | $427.50 | 0.70 | $299.25 |
| 5/2/2025 | Continue drafting and revising motion for attorney fees and supporting declaration | MSS | $427.50 | 2.50 | $1,068.75 |
| 5/5/2025 | Further draft and revise motion for attorneys fees and prepare supporting exhibits (1.4); email exchange with opposing counsel re conferral on fee petition (.1) | MSS | $427.50 | 1.50 | $641.25 |
| | | | | | |
| | **Fees Associated with Motion to Compel Discovery and for Sanctions** | | | | **$9,137.70** |
| AMG | $415.80 | | | | |
| BKB | $1,385.10 | | | | |
| DMH | $2,430.90 | | | | |
| KLO | $437.40 | | | | |
| MSS | $4,468.50 | | | | |
| Sub total | **$9,137.70** | | | | |
| | | | | | |
| | **Fees Associated with Motion for Attorneys' Fees** | | | | **$3,113.10** |
| BKB | $291.60 | | | | |
| MSS | $2,821.50 | | | | |
| Sub total | **$3,113.10** | | | | |
| | | | | | |
| Total: | **$12,250.80** | | | | **$12,250.80** |

# Oregon State Bar
# 2022 Economic Survey
## Report of Findings







Regional Research Institute

Shaddy-Farnsworth Decl
Ex B Page 1 of 10

This report was prepared for:

**Oregon State Bar**

**Susan Grabe**
Chief Communications & Public Affairs Officer

**Matt Shields**
Public Affairs Staff Attorney

Submitted
March 2023

By

**Debi Elliott, PhD**
503-725-5198
elliottd@pdx.edu

**Mary Oschwald, PhD**
503-725-9602
oschwald@pdx.edu

**Nick Chaiyachakorn, BA**
503-725-4040
chaiyac@pdx.edu

**Megan Cook, BA**
503-725-4040
megcook@pdx.edu

**Christian Thompson, BA**
503-725-4040
cdt3@pdx.edu

### Regional Research Institute for Human Services

Portland State University
P.O. Box 751                      1600 SW 4th Avenue, Suite 900
Portland, OR 97207-0751           Portland, OR 97201

www.pdx.edu/regional-research-institute

# Table of Contents

**Executive Summary** ........................................................................................................... **8**

**Methodology** ..................................................................................................................... **10**

    Background ...................................................................................................................... 10

    Sampling Plan and Respondent Recruitment ................................................................ 11

    Disposition of Records and Response Rate .................................................................... 13

    Sampling Error................................................................................................................. 13

    Attorney Characteristics ................................................................................................. 14

    Analytic Approach and Findings Interpretation ............................................................ 17

    Comparison to Previous Surveys ................................................................................... 18

**Findings** ............................................................................................................................ **19**

    Attorney Employment Characteristics ........................................................................... 19

    Compensation.................................................................................................................. 26

    Billing Practices .............................................................................................................. 41

    Practice Characteristics .................................................................................................. 48

    COVID-19 Impact............................................................................................................ 53

    Wellness .......................................................................................................................... 60

    Law School Student Debt ............................................................................................... 68

    Law School Student Debt Level ...................................................................................... 71

    Law School Monthly Student Debt Payments................................................................. 77

    Career Satisfaction ......................................................................................................... 83

    Future Plans .................................................................................................................... 89

    Lawyers of Color ............................................................................................................ 91

    Women Lawyers.............................................................................................................. 99

**Appendix A: Survey Instrument** ...................................................................................... **107**

**Appendix B: Email Invitation and Reminders** ................................................................ **113**

**Shaddy-Farnsworth Decl
Ex B Page 3 of 10**

# List of Tables and Figures

Table 1:     Distribution of OSB Members by Region ........................................................................ 11

Figure 1:    Map of Oregon Regions ..................................................................................................... 12

Table 2:     Survey Recruitment ........................................................................................................... 12

Table 3:     Final Record Dispositions ................................................................................................. 13

Table 4:     Attorney Characteristics .................................................................................................... 14

Table 5:     Children in the Household .................................................................................................. 15

Table 6:     Children in the Household by Attorney Gender ................................................................ 16

Table 7:     Selected Data across Survey Years ................................................................................... 18

Table 8:     Years Admitted to Practice in Oregon ............................................................................. 19

Table 9:     Total Years Admitted to Practice in Any State ................................................................ 20

Table 10:    Other States in which Oregon Attorneys are an Active Member ..................................... 20

Table 11:    Currently Working as a Lawyer in Oregon ....................................................................... 21

Table 12:    Current Level of Employment ........................................................................................... 21

Table 13:    Level of Non-Legal Employment ...................................................................................... 22

Table 14:    Reasons for Choosing to Be a Part-time Lawyer ............................................................. 22

Table 15:    Total Years Admitted to Practice for Respondents Not Working as a Lawyer in Oregon ......... 23

Table 16:    Type of Employment as of 12/31/2021 ............................................................................. 23

Table 17:    Area of Practice Representing 50% or More of Practice as of 12/31/21 ........................... 24

Table 18:    Size of Practice as of 12/31/21 .......................................................................................... 25

Table 19:    Method of Payment as of 12/31/21 for Full- and Part-time Lawyers ............................... 25

Table 20:    2021 Compensation for All Respondents .......................................................................... 26

Table 21:    2021 Compensation for Full-time and Part-time Lawyers by Selected Variables ................. 26

Table 22:    2021 Compensation by Gender .......................................................................................... 28

Table 23:    2021 Compensation by Gender and Years Admitted to Practice ....................................... 29

Table 24:    2021 Compensation by Age .............................................................................................. 30

Table 25:    2021 Compensation by Years Admitted to Practice in Oregon ......................................... 30

Table 26:    2021 Compensation by Total Years Admitted to Practice .................................................. 32

Table 27:    2021 Compensation by Type of Employment as of 12/31/21 ............................................ 33

Table 28:    2021 Compensation by Area of Practice ............................................................................ 34

Table 29:    2021 Compensation by Size of Practice ............................................................................ 37

Table 30:    2021 Compensation by Current Level of Employment ...................................................... 38

Table 31:    2021 Compensation by Method of Payment as of 12/31/21 .............................................. 38

Table 32:    2021 Compensation by Method of Payment – Full-time Lawyers Only ............................. 39

Table 33:    2021 Hours Billed per Month – Private Practice, Full- or Part-time by Choice ................. 41

Table 34:    2021 Hours Billed per Month by Method of Payment – Private Practice, Full- or Part-time by Choice ........................................................................................................ 41

Table 35:    2021 Hourly Billing Rate – Private Practice ...................................................................... 42

**Shaddy-Farnsworth Decl**
**Ex B Page 4 of 10**

Table 36:    2021 Hourly Billing Rate by Total Years Admitted to Practice – Private Practice.................. 42
Table 37:    2021 Hourly Billing Rate by Area of Practice – Private Practice........................................... 43
Table 38:    Change in Billing Methods over Last Five Years – Private Practice .................................... 47
Table 39:    2021 Hours Worked per Month by Current Level of Employment........................................ 48
Table 40:    2021 Hours Worked per Month by Type of Employment – Full-time Lawyers Only .............. 48
Table 41:    2021 Average Pro-Bono and Community Service Hours per Month by Type of Employment .. 49
Table 42:    Policies for Offering Legal Services at a Reduced Rate ..................................................... 50
Table 43:    Policies for Offering Legal Services at a Reduced Rate by Firm Size.................................. 50
Table 44:    Number of Clients Provided Reduced Rate Legal Services.................................................. 51
Table 45:    Number of Clients Provided Reduced Rate Legal Services by Firm Size ............................. 52
Table 46:    Percentage of Normal Rate Reduced................................................................................ 52
Table 47:    Percentage of Normal Rate Reduced by Firm Size ........................................................... 52
Table 48:    Changes to Work Location due to COVID-19 ................................................................... 53
Table 49:    Continue to Work in Office Less Frequently than Prior to COVID-19.................................. 53
Table 50:    Changes to Work Location due to COVID-19 by Employment Type .................................... 54
Table 51:    Changes to Work Location due to COVID-19 by Total Years Admitted to Practice ............... 56
Table 52:    Changes to Work Location due to COVID-19 by Gender .................................................... 58
Table 53:    Wellness Policies and Practices ...................................................................................... 60
Table 54:    Wellness Policies and Practices by Employment Type........................................................ 61
Table 55:    Wellness Policies and Practices by Total Years Admitted to Practice .................................. 63
Table 56:    Wellness Policies and Practices by Gender....................................................................... 66
Table 57:    Current Law School Student Debt as of 12/31/21 ............................................................ 68
Table 58:    Current Law School Student Debt as of 12/31/21 by Type of Employment ....................... 68
Table 59:    Current Law School Student Debt as of 12/31/21 by Level of Employment........................ 69
Table 60:    Student Debt as of 12/31/21 by Total Years Admitted to Practice .................................... 69
Table 61:    Student Debt as of 12/31/21 by Race/Ethnicity .............................................................. 70
Table 62:    Total Law School Student Debt as of 12/31/21 ............................................................... 71
Table 63:    Total Law School Student Debt as of 12/31/21 by Type of Employment............................ 71
Table 64:    Total Law School Student Debt as of 12/31/21 by Level of Employment ............................ 72
Table 65:    Total Law School Student Debt as of 12/31/21 by Total Years Admitted to Practice............ 73
Table 66:    Total Law School Student Debt as of 12/31/21 by Race/Ethnicity...................................... 74
Table 67:    Making Current Law School Student Debt Payments........................................................... 77
Table 68:    Monthly Law School Student Loan Payments ................................................................... 77
Table 69:    Monthly Law School Student Loan Payments by Type of Employment................................ 78
Table 70:    Monthly Law School Student Loan Payments by Level of Employment ............................... 79
Table 71:    Monthly Law School Student Loan Payments by Total Years Admitted to Practice................ 79
Table 72:    Monthly Law School Student Loan Payments by Race/Ethnicity........................................ 81
Figure 2:    Legal Employment Satisfaction Mean Ratings .................................................................. 83
Figure 3:    Legal Employment Satisfaction Mean Ratings by Gender.................................................. 83

**Shaddy-Farnsworth Decl**
**Ex B Page 5 of 10**

Table 73:    Legal Employment Satisfaction Mean Ratings by Total Years Admitted to Practice ............... 84

Table 74:    Legal Employment Satisfaction Mean Ratings by Type of Employment as of 12/31/21 ......... 84

Table 75:    Legal Employment Satisfaction Mean Ratings by Area of Practice as of 12/31/21 ............... 85

Table 76:    Legal Employment Satisfaction Mean Ratings by Current Level of Employment ................... 86

Figure 4:    Non-Legal Employment Satisfaction Mean Ratings ......................................................... 86

Table 77:    Non-Legal Employment Satisfaction Mean Ratings by Current Level of Non-Legal
Employment ................................................................................................................... 87

Figure 5:    Non-Legal Employment Satisfaction Mean Ratings by Gender ........................................... 87

Table 78:    Non-Legal Employment Satisfaction Mean Ratings by Total Years Admitted to  Practice ....... 88

Table 79:    Future Plans in Next Five Years ...................................................................................... 89

Table 80:    Future Plans in Next Five Years by Type of Employment as of 12/31/21 ............................ 89

Table 81:    Future Plans in Next Five Years by Legal Employment Satisfaction .................................... 90

Table 82:    Lawyers of Color: Age ................................................................................................... 91

Table 83:    Lawyers of Color: Years Admitted to Practice in Oregon ................................................... 91

Table 84:    Lawyers of Color: Current Level of Employment ............................................................... 92

Table 85:    Lawyers of Color: Type of Employment as of 12/31/21 ..................................................... 92

Table 86:    Lawyers of Color: Area of Practice Representing 50% or More of Practice as of 12/31/21 ..... 93

Table 87:    Lawyers of Color: Size of Practice as of 12/31/21 ............................................................ 94

Table 88:    Lawyers of Color: Method of Payment as of 12/31/21 ....................................................... 94

Table 89:    Lawyers of Color: 2021 Annual Compensation ................................................................. 95

Table 90:    Lawyers of Color: 2021 Annual Compensation by Current Level of Employment ................... 95

Table 91:    Lawyers of Color: 2021 Annual Compensation by Total Years Admitted to Practice ............. 95

Table 92:    Lawyers of Color: 2021 Hours Billed per Month – Private Practice Only ............................. 96

Table 93:    Lawyers of Color: 2021 Hourly Billing Rate – Private Practice Only .................................... 97

Table 94:    Lawyers of Color: 2021 Hours Worked per Month by Current Level of Employment ............. 97

Figure 6:    Lawyers of Color: Legal Employment Satisfaction Mean Ratings ........................................ 98

Table 95:    Lawyers of Color: Future Plans in Next Five Years ............................................................ 98

Table 96:    Women Lawyers: Age ................................................................................................... 99

Table 97:    Women Lawyers: Years Admitted to Practice in Oregon ................................................... 99

Table 98:    Women Lawyers: Total Years Admitted to Practice ....................................................... 100

Table 99:    Women Lawyers: Current Level of Employment ........................................................... 100

Table 100:   Women Lawyers: Type of Employment as of 12/31/21 ................................................... 101

Table 101:   Women Lawyers: Area of Practice Representing 50% or More of Practice as of 12/31/21 ... 101

Table 102:   Women Lawyers: Size of Practice as of 12/31/21 .......................................................... 102

Table 103:   Women Lawyers: Method of Payment as of 12/31/21 ..................................................... 102

Table 104:   Women Lawyers: 2021 Annual Compensation ............................................................. 103

Table 105:   Women Lawyers: 2021 Annual Compensation by Current Level of Employment ................. 103

Table 106:   Women Lawyers: 2021 Annual Compensation by Total Years Admitted to Practice ............ 103

Table 107:   Women Lawyers: 2021 Hours Billed per Month – Private Practice Only ............................ 104

Table 108:   Women Lawyers: 2021 Hourly Billing Rate – Private Practice Only .................................. 105

**Shaddy-Farnsworth Decl**
**Ex B Page 6 of 10**

Table 109:   Women Lawyers: 2021 Hours Worked per Month by Current Level of Employment............ 105

Figure 7:     Women Lawyers: Legal Employment Satisfaction Mean Ratings ...................................... 106

Table 110:   Women Lawyers: Future Plans in Next Five Years ........................................................ 106

**Shaddy-Farnsworth Decl**
**Ex B Page 7 of 10**

## Billing Rate

Table 35 presents the 2021 hourly billing rate for private practice lawyers, regardless of level of employment (i.e., full-time, part-time by choice, and part-time due to lack of legal work). The mean hourly rate was $344 statewide, and ranged from $269 to $401 regionally.

### Table 35: 2021 Hourly Billing Rate – Private Practice

| | Oregon (n=1,613) | Downtown Portland (n=597) | Tri-County (n=500) | Upper Willamette Valley (n=151) | Lower Willamette Valley (n=134) | Southern Oregon (n=69) | Eastern Oregon (n=122) | Oregon Coast (n=40) |
|---|---|---|---|---|---|---|---|---|
| Mean Hourly Rate | $344 | $401 | $329 | $293 | $306 | $281 | $288 | $269 |
| Median Hourly Rate | $325 | $380 | $325 | $300 | $300 | $270 | $288 | $250 |
| Low Hourly Rate | $75 | $125 | $75 | $105 | $75 | $100 | $75 | $175 |
| 95th Percentile | $575 | $686 | $500 | $415 | $459 | $405 | $399 | $399 |
| High Hourly Rate | $1,375 | $1,150 | $1,375 | $500 | $754 | $600 | $500 | $650 |

Q14: When you charged on an hourly basis, what was your usual billing rate per hour in 2021?
Q6: Which type of employment represented 50% or more of your practice as of 12/31/2021? *[private practice only]*

## Total Years Admitted to Practice

Table 36 presents the 2021 hourly bill rate data by total years admitted to practice for all private practice lawyers, regardless of level of employment. Statewide, the mean hourly billing rate increased as the number of years admitted to practice increased (aside from a small decrease in the 16-20 year range), reaching a mean of $384 for lawyers admitted to practice for Over 30 Years. Slight variations occurred regionally.

### Table 36: 2021 Hourly Billing Rate by Total Years Admitted to Practice – Private Practice

| 0-3 Years | Oregon (n=148) | Downtown Portland (n=69) | Tri-County (n=32) | Upper Willamette Valley (n=15) | Lower Willamette Valley (n=12) | Southern Oregon (n=6) | Eastern Oregon (n=12) | Oregon Coast (n=n/a) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $273 | $310 | $257 | $232 | $223 | $194 | $255 | n/a |
| Median Rate | $250 | $300 | $250 | $225 | $230 | $180 | $243 | n/a |
| 95th Percentile | $459 | $538 | $425 | n/a | n/a | n/a | n/a | n/a |

| 4-6 Years | Oregon (n=165) | Downtown Portland (n=62) | Tri-County (n=48) | Upper Willamette Valley (n=20) | Lower Willamette Valley (n=13) | Southern Oregon (n=10) | Eastern Oregon (n=11) | Oregon Coast (n=n/a) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $285 | $312 | $281 | $276 | $234 | $241 | $276 | n/a |
| Median Rate | $275 | $308 | $263 | $250 | $230 | $250 | $295 | n/a |
| 95th Percentile | $468 | $495 | $464 | $498 | n/a | n/a | n/a | n/a |

| 7-9 Years | Oregon (n=160) | Downtown Portland (n=58) | Tri-County (n=51) | Upper Willamette Valley (n=18) | Lower Willamette Valley (n=14) | Southern Oregon (n=n/a) | Eastern Oregon (n=14) | Oregon Coast (n=n/a) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $308 | $339 | $316 | $272 | $261 | n/a | $264 | n/a |
| Median Rate | $300 | $350 | $325 | $275 | $245 | n/a | $275 | n/a |
| 95th Percentile | $449 | $486 | $450 | n/a | n/a | n/a | n/a | n/a |

| 10-12 Years | Oregon (n=173) | Downtown Portland (n=72) | Tri-County (n=51) | Upper Willamette Valley (n=17) | Lower Willamette Valley (n=11) | Southern Oregon (n=7) | Eastern Oregon (n=10) | Oregon Coast (n=5) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $334 | $379 | $312 | $289 | $339 | $281 | $271 | $253 |
| Median Rate | $325 | $370 | $320 | $300 | $325 | $250 | $275 | $250 |
| 95th Percentile | $547 | $567 | $450 | n/a | n/a | n/a | n/a | n/a |

**Shaddy-Farnsworth Decl**
**Ex B Page 8 of 10**

## Table 36: 2021 Hourly Billing Rate by Total Years Admitted to Practice – Private Practice

| 13-15 Years | Oregon (n=150) | Downtown Portland (n=66) | Tri-County (n=44) | Upper Willamette Valley (n=11) | Lower Willamette Valley (n=13) | Southern Oregon (n=n/a) | Eastern Oregon (n=7) | Oregon Coast (n=5) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $366 | $416 | $348 | $310 | $336 | n/a | $305 | $248 |
| Median Rate | $350 | $400 | $350 | $315 | $300 | n/a | $300 | $250 |
| 95th Percentile | $586 | $733 | $490 | n/a | n/a | n/a | n/a | n/a |

| 16-20 Years | Oregon (n=187) | Downtown Portland (n=66) | Tri-County (n=69) | Upper Willamette Valley (n=15) | Lower Willamette Valley (n=11) | Southern Oregon (n=9) | Eastern Oregon (n=14) | Oregon Coast (n=n/a) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $359 | $445 | $320 | $290 | $314 | $303 | **$314** | n/a |
| Median Rate | $350 | $425 | $315 | $300 | $305 | $280 | $285 | n/a |
| 95th Percentile | $600 | $683 | $463 | n/a | n/a | n/a | n/a | n/a |

| 21-30 Years | Oregon (n=317) | Downtown Portland (n=103) | Tri-County (n=109) | Upper Willamette Valley (n=27) | Lower Willamette Valley (n=26) | Southern Oregon (n=18) | Eastern Oregon (n=29) | Oregon Coast (n=5) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $371 | $447 | $351 | **$342** | $315 | **$312** | $306 | $250 |
| Median Rate | $350 | $450 | $350 | $350 | $313 | $300 | $320 | $250 |
| 95th Percentile | $600 | $697 | $550 | $477 | $422 | n/a | $450 | n/a |

| Over 30 Years | Oregon (n=313) | Downtown Portland (n=101) | Tri-County (n=96) | Upper Willamette Valley (n=28) | Lower Willamette Valley (n=34) | Southern Oregon (n=12) | Eastern Oregon (n=25) | Oregon Coast (n=17) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | **$384** | **$483** | **$364** | $304 | **$349** | $308 | $292 | **$302** |
| Median Rate | $350 | $425 | $350 | $308 | $325 | $313 | $275 | $275 |
| 95th Percentile | $722 | $798 | $500 | $408 | $571 | n/a | $435 | n/a |

Q14: When you charged on an hourly basis, what was your usual billing rate per hour in 2021?
Q2: What year were you first admitted to a state bar other than Oregon? and year admitted to OSB from database *[converted to years]*
Q6: Which type of employment represented 50% or more of your practice as of 12/31/2021? *[private practice only]*

### Area of Practice

Table 37 presents the 2021 hourly billing rate data by area of practice for all private practice lawyers, regardless of level of employment. The highest hourly billing rate was for Business/Corporate – Litigation (mean=$408) statewide, with variations across the regions.

## Table 37: 2021 Hourly Billing Rate by Area of Practice – Private Practice

| Administrative Law | Oregon (n=33) | Downtown Portland (n=16) | Tri-County (n=10) | Upper Willamette Valley (n=n/a) | Lower Willamette Valley (n=5) | Southern Oregon (n=n/a) | Eastern Oregon (n=n/a) | Oregon Coast (n=n/a) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $331 | $337 | $309 | n/a | **$379** | n/a | n/a | n/a |
| Median Rate | $300 | $288 | $275 | n/a | $325 | n/a | n/a | n/a |
| 95th Percentile | $629 | n/a | n/a | n/a | n/a | n/a | n/a | n/a |

| Bankruptcy | Oregon (n=34) | Downtown Portland (n=15) | Tri-County (n=12) | Upper Willamette Valley (n=n/a) | Lower Willamette Valley (n=n/a) | Southern Oregon (n=n/a) | Eastern Oregon (n=n/a) | Oregon Coast (n=n/a) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $383 | $432 | $364 | n/a | n/a | n/a | n/a | n/a |
| Median Rate | $370 | $400 | $375 | n/a | n/a | n/a | n/a | n/a |
| 95th Percentile | $631 | n/a | n/a | n/a | n/a | n/a | n/a | n/a |

**Shaddy-Farnsworth Decl**
**Ex B Page 9 of 10**

## Table 37: 2021 Hourly Billing Rate by Area of Practice – Private Practice

| Business/Corporate — Litigation | Oregon (n=189) | Downtown Portland (n=108) | Tri-County (n=37) | Upper Willamette Valley (n=19) | Lower Willamette Valley (n=13) | Southern Oregon (n=5) | Eastern Oregon (n=6) | Oregon Coast (n=n/a) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | **$408** | **$474** | $349 | $284 | $311 | $314 | $294 | n/a |
| Median Rate | $375 | $450 | $350 | $290 | $300 | $325 | $302 | n/a |
| 95th Percentile | $730 | $774 | $503 | n/a | n/a | n/a | n/a | n/a |

| Business/Corporate – Transactional | Oregon (n=216) | Downtown Portland (n=79) | Tri-County (n=63) | Upper Willamette Valley (n=19) | Lower Willamette Valley (n=23) | Southern Oregon (n=10) | Eastern Oregon (n=18) | Oregon Coast (n=n/a) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $359 | $430 | $343 | $284 | $293 | $318 | $313 | n/a |
| Median Rate | $350 | $395 | $350 | $280 | $300 | $360 | $317 | n/a |
| 95th Percentile | $550 | $710 | $470 | n/a | $440 | n/a | n/a | n/a |

| Civil Litigation – Defendant (excludes insurance defense) | Oregon (n=193) | Downtown Portland (n=108) | Tri-County (n=36) | Upper Willamette Valley (n=15) | Lower Willamette Valley (n=9) | Southern Oregon (n=11) | Eastern Oregon (n=10) | Oregon Coast (n=n/a) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $381 | $442 | $335 | $259 | $288 | $281 | $286 | n/a |
| Median Rate | $350 | $415 | $350 | $260 | $300 | $300 | $285 | n/a |
| 95th Percentile | $655 | $743 | $475 | n/a | n/a | n/a | n/a | n/a |

| Civil Litigation – Insurance Defense | Oregon (n=118) | Downtown Portland (n=67) | Tri-County (n=29) | Upper Willamette Valley (n=12) | Lower Willamette Valley (n=n/a) | Southern Oregon (n=n/a) | Eastern Oregon (n=n/a) | Oregon Coast (n=n/a) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $232 | $232 | $222 | $243 | n/a | n/a | n/a | n/a |
| Median Rate | $225 | $220 | $200 | $235 | n/a | n/a | n/a | n/a |
| 95th Percentile | $350 | $340 | $413 | n/a | n/a | n/a | n/a | n/a |

| Civil Litigation – Plaintiff (excludes personal injury) | Oregon (n=240) | Downtown Portland (n=99) | Tri-County (n=81) | Upper Willamette Valley (n=26) | Lower Willamette Valley (n=15) | Southern Oregon (n=11) | Eastern Oregon (n=6) | Oregon Coast (n=n/a) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $374 | $419 | $363 | $305 | $364 | $297 | $286 | n/a |
| Median Rate | $350 | $410 | $350 | $300 | $345 | $300 | $298 | n/a |
| 95th Percentile | $580 | $685 | $525 | $498 | n/a | n/a | n/a | n/a |

| Civil Litigation – Plaintiff Personal Injury | Oregon (n=157) | Downtown Portland (n=37) | Tri-County (n=77) | Upper Willamette Valley (n=20) | Lower Willamette Valley (n=9) | Southern Oregon (n=n/a) | Eastern Oregon (n=6) | Oregon Coast (n=n/a) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | $368 | $393 | **$367** | **$355** | $329 | n/a | **$388** | n/a |
| Median Rate | $350 | $400 | $350 | $350 | $350 | n/a | $393 | n/a |
| 95th Percentile | $550 | $619 | $503 | $498 | n/a | n/a | n/a | n/a |

| Criminal Law, Prosecution | Oregon (n=n/a) | Downtown Portland (n=n/a) | Tri-County (n=n/a) | Upper Willamette Valley (n=n/a) | Lower Willamette Valley (n=n/a) | Southern Oregon (n=n/a) | Eastern Oregon (n=n/a) | Oregon Coast (n=n/a) |
|---|---|---|---|---|---|---|---|---|
| Mean Rate | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| Median Rate | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 95th Percentile | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |

Shaddy-Farnsworth Decl
Ex B Page 10 of 10

# Morones Survey

## of

# Commercial Litigation Fees

### Portland, Oregon

## 2024 Update

1455 SW Broadway, Suite 1750 | Portland, OR 97201 | P 503.223.5168 | F 503.223.5179

**moronesanalytics.com**



# 2024 Summary Report

| | | 2024 | 2022 | 2020 | 2018 | 2016 | 16-24 CAGR |
|---|---|---|---|---|---|---|---|
| Number of participating firms | | 23 | 20 | 21 | 19 | 21 | na |
| Number of reported litigation partners/shareholders | | 187 | 166 | 189 | 185 | 189 | na |
| Number of reported litigation attorneys | | 324 | 297 | 318 | 305 | 312 | na |
| 30+ yrs experience [Bar year <=1994 for 2024][a] | AVE | $723 | $674 | $623 | $559 | $517 | 4.3% |
| | MED | $713 | $675 | $620 | $565 | $525 | 3.9% |
| 20-29 yrs experience [Bar years 1995-2004 for 2024][a] | AVE | $650 | $574 | $499 | $474 | $437 | 5.1% |
| | MED | $588 | $555 | $478 | $468 | $445 | 3.5% |
| 10-19 yrs experience [Bar years 2005-2014 for 2024][a] | AVE | $556 | $512 | $451 | $411 | $371 | 5.2% |
| | MED | $530 | $495 | $440 | $400 | $355 | 5.1% |
| 0-9 yrs experience [Bar years >=2015 for 2024][a] | AVE | $454 | $402 | $344 | $318 | $300 | 5.3% |
| | MED | $425 | $398 | $350 | $320 | $300 | 4.5% |
| Highest attorney hourly rates for each participating firm | AVE | $778 | $707 | $645 | $591 | $525 | 5.1% |
| | MED | $675 | $663 | $665 | $605 | $540 | 2.8% |
| Percent of commercial litigation revenues derived from hourly billings (versus contingent or flat fee) | AVE | 90% | 90% | 91% | 86% | 92% | na |
| | MED | 95% | 95% | 93% | 93% | 95% | na |

<u>Note</u>

a.  In order to reduce the impact of any potential outliers, two data points from each year of experience category (one instance of the highest and lowest rates reported) have been removed from calculated average survey results.

## Fees effective January 1 of 2024, 2022, 2020, 2018 and 2016

**Morones Analytics, LLC** | 1455 SW Broadway, Suite 1750 | Portland, OR 97201 | P 503.223.5168 | F 503.223.5179 | **moronesanalytics.com**



## 2024 Update
## Survey Methodology

In March of 2002, Daniel H. Skerritt and David B. Markowitz commissioned Serena Morones, CPA, ASA, ABV, CFE to conduct a survey of commercial litigation attorney fee rates in Portland, Oregon.

They commissioned the survey for the purpose of developing accurate market data to support their frequent expert testimony in attorney fee disputes. They previously suffered from a lack of complete, empirical market data to use in fee disputes.

They defined their relevant market as each law firm located in the metro Portland area with more than five attorneys specializing in commercial litigation. They defined "specializing" as spending more than 50% of their time in the practice of commercial litigation.

To conduct the survey, Ms. Morones' research team identified the designated market by reviewing the Oregon State Bar membership directory and conducting internet searches to identify all firms located in the Portland Metro area. Each Portland area firm's web site was reviewed to determine if the firm advertised the practice of commercial litigation. If the firm advertised commercial litigation, the number of attorney biographies that described commercial litigation as a practice area of the attorney were counted. If the firm advertised at least five attorneys listing commercial litigation as a practice area, they were invited to respond to the survey.

For the 2024 survey update, Ms. Morones' research team identified 34 firms that met the specified criteria and 23 of those firms participated in the survey, reporting data for 324 litigation attorneys.

**2024 Update Survey Methodology**

# Morones Survey

## of

# Commercial Litigation Fees

Portland, Oregon

## 2024
## Publication Policy

Serena Morones, CPA, ASA, ABV, CFE has conducted a survey of Portland commercial litigation fees, as of January 1, 2024, and will keep all individual survey responses confidential. Individual attorney rates will not be disclosed to any other person. Neither Laura Salerno Owens nor Daniel Skerritt, the attorneys commissioning the survey this year, will have access to the confidential responses.

The individual responses have been entered into a database and a summary report has been distributed to survey participants. There is no charge to survey participants for the summary report. The summary report will disclose average and median fees by years of experience. In order to comply with Federal Trade Commission guidelines for price surveys, the survey will report all statistics in averages with no fewer than five data points.

In addition to publishing a summary report, Serena Morones will make statistical data available for use in fee dispute claims. Any firm engaged in a fee dispute claim may submit the names of at least five attorneys who are deemed comparable to an attorney whose fee is disputed. Ms. Morones will produce a report showing the average and median fee for all five comparable attorneys, not disclosing any individual rate. Alternatively, any expert may request the average and median rate of attorneys in the database by comparable bar year. Any firm wishing to obtain this data must provide the name of the related case to Ms. Morones. The cost to obtain comparable data will be billed at an hourly rate for the time required to generate reports, with a minimum charge of $650.

This survey publication policy has been designed to protect the confidentiality of survey participants, but also to provide sufficiently detailed market data for use in resolving fee disputes.

**2024 Publication Policy**

**2024 Edition**

# ALM/IPMA
# Annual Compensation Survey for Paralegals, Practice Support Professionals, and Managers

**Salary**

**Bonus**

**Benefits**

**Billing Rates**

**Billable Hours**





ALM Intelligence

www.alm.com/intelligence | Customer Service 888-770-5647

**Shaddy-Farnworth Decl**
**Ex D Page 1 of 4**

ALM/International Practice Management Association's

# Annual Compensation Survey for Paralegals, Practice Support Professionals, and Managers
# 2024 Edition

Published in Partnership with the

**INTERNATIONAL PRACTICE MANAGEMENT ASSOCIATION**
One Glenlake Parkway, NE
Suite 1200
Atlanta, GA 30328
Voice (404) 467-6757
www.theipma.org
info@theipma.org

by

**ALM LEGAL INTELLIGENCE**
150 East 42nd Street
New York, NY 10017
Voice (888) 770-5647 ▲ Fax (646) 822-5263
almlegalintel@alm.com

No part of this work may be reproduced or copied in any form or by any means, graphic, electronic or mechanical, including photocopying, recording, taping, or information and retrieval systems, without prior written permission of the publisher.

© 2024 ALM Media Properties, LLC. All rights reserved. For permission contact 800-888-8300 or reprintscustomerservice@alm.com.

**Shaddy-Farnworth Decl**
**Ex D Page 2 of 4**

# TABLE OF CONTENTS

Introduction………………………. ………..3

Organization Profile……………. ……....10

Benefits…………………………... ……….26

Salary Administration…………... ……….31

Total Data………………………... ……….33

Data by Region/Division………..……....39

Data by Major City………………. …......200

Data by AM Law 200 Status…... ………326

Questionnaire………………....... ………524

Shaddy-Farnsworth Decl
Ex D Page 3 of 4

**Bonus Compensation**
**Division**
**Paralegal**

| Paralegal | | Bonus Compensation | | | | | |
|---|---|---|---|---|---|---|---|
| | | Number of Firms | Number of Positions | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ | Ninth Decile $ |
| Division | New England | 19 | 161 | $4,715 | $2,000 | $3,019 | $5,000 | $10,000 |
| | Middle Atlantic | 40 | 459 | $5,451 | $2,500 | $4,000 | $7,000 | $12,450 |
| | South Atlantic | 48 | 826 | $4,999 | $1,500 | $3,277 | $6,231 | $10,500 |
| | East North Central | 32 | 380 | $5,648 | $2,000 | $3,954 | $8,000 | $12,000 |
| | East South Central | 9 | 76 | $5,359 | $1,325 | $3,000 | $5,800 | $14,500 |
| | West North Central | 9 | 60 | $5,259 | $1,125 | $2,500 | $7,366 | $13,551 |
| | West South Central | 31 | 163 | $5,166 | $2,000 | $3,050 | $6,000 | $10,000 |
| | Mountain | 14 | 61 | $3,199 | $1,500 | $2,700 | $4,000 | $6,000 |
| | Pacific | 41 | 597 | $6,222 | $3,000 | $5,000 | $7,500 | $12,500 |

**Billing Rate**
**Division**
**Paralegal**

| Paralegal | | Billing Rate | | | | | |
|---|---|---|---|---|---|---|---|
| | | Number of Firms | Number of Positions | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ | Ninth Decile $ |
| Division | New England | 19 | 179 | $351 | $270 | $320 | $400 | $530 |
| | Middle Atlantic | 40 | 535 | $411 | $345 | $400 | $495 | $560 |
| | South Atlantic | 48 | 882 | $333 | $225 | $355 | $435 | $500 |
| | East North Central | 32 | 471 | $371 | $295 | $350 | $450 | $560 |
| | East South Central | 9 | 122 | $261 | $220 | $280 | $330 | $350 |
| | West North Central | 9 | 134 | $340 | $290 | $340 | $405 | $435 |
| | West South Central | 31 | 182 | $404 | $330 | $385 | $480 | $525 |
| | Mountain | 14 | 100 | $364 | $295 | $330 | $395 | $465 |
| | Pacific | 41 | 672 | $415 | $335 | $425 | $495 | $560 |

2024 ALM/IPMA
Regional Data
Paralegal

**Shaddy-Farnsworth Decl**
**Ex D Page 4 of 4**

BRENDA K. BAUMGART, OSB No. 992160
brenda.baumgart@stoel.com
MELISSA J. HEALY, OSB No. 102176
melissa.healy@stoel.com
MATTHEW A. TELLAM, OSB No. 194612
matt.tellam@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for Defendant Legacy Health*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WILLIAM MATTHEWS, | Case No.:  6:24-cv-00592-MC |
| Plaintiff, | **DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES** |
| v. | |
| LEGACY HEALTH, | |
| Defendant. | |

## I.      LOCAL RULE 7-1 CERTIFICATION

As required by Local Rule 7-1(a)(1)(A), counsel for Defendant ("Legacy") conferred

with counsel for Plaintiff regarding this motion.  Plaintiff opposes this motion.

## II.      MOTION AND SUPPORTING MEMORANDUM

Pursuant to the Court's Opinion and Order (Dkt. 35) granting Legacy's Motion for Order

to Show Cause and Sanctions (the "Motion") (Dkt. 29), Fed. R. Civ. P. 54, and Local Rules 54-1

through 54-3, Legacy moves the Court to assess attorneys' fees against Plaintiff and his counsel

as set forth below.  Although the Court's Opinion and Order already awarded Legacy its fees

Page 1 – DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES

related to the Motion (Dkt. 35 at 3),[1] the amount of fees has not yet been determined by the

Court.  This motion is supported by the concurrently filed Declaration of Melissa J. Healy

("Healy Decl.") and supporting exhibits attached thereto.

### A.    Background

On November 19, 2024, Legacy filed the Motion because Plaintiff's Second Amended

Complaint (Dkt. 28 (the "SAC")) did not comply with the Court's Opinion & Order on Legacy's

Motion to Dismiss (Dkt. 23) and violated the requirements of applicable federal and local rules

regarding amendments.  (*See* Dkt. 29.)  On December 26, 2024, the Court issued its Opinion and

Order, holding:

> Because the amendments in the SAC far exceed the scope of the parties'
> Agreement, the SAC is stricken.  The Court notes, however, that even if Plaintiff
> had filed the SAC within the initial 30-day window, the amendments likewise
> exceed the Court's Opinion and Order and cannot be allowed.  Lastly, it bears
> repeating that Plaintiff's counsel has made a pattern out of this style of amending.
> The Court is simply not willing to allow it to continue…. The Court … strikes
> the SAC…. [Legacy] is awarded fees and costs related to the Motion.

(Dkt. 35 at 2-3.)

### B.    Legacy Is Entitled to Attorneys' Fees

Pursuant to the Court's Opinion and Order, Legacy is entitled to an award of all

attorneys' fees incurred in bringing the Motion.  Legacy's attorneys' fees in this respect amount

to $34,990.68.

Legacy is also entitled to recover the attorneys' fees associated with preparing this

motion for fees and supporting documents as part of its award, which are currently $6,188.43.

*Copeland-Turner v. Wells Fargo Bank, N.A.*, No. 3:11-CV-37-HZ, 2012 WL 92957, at *6-7 (D.

---

[1] The Court also awarded Legacy its costs, but Legacy is not seeking any recoverable costs
associated with its Motion.

Shaddy-Farnsworth Decl
Ex E Page 2 of 62

Or. Jan. 11, 2012) (allowing recovery of fees incurred in preparing attorneys' fee motion). These fees may increase with additional briefing and argument. (Healy Decl. ¶ 4.)

As set forth below, Legacy's fees represent reasonable preparation time for the underlying Motion and this motion for fees.

### C.    Legacy's Attorneys' Rates Are Reasonable.

Reasonable attorneys' fees begin with a determination of the lodestar, which is the product of the number of hours reasonably spent on the litigation and a reasonable hourly rate for the work. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The hourly rates requested for the attorneys and paralegal that participated in this matter are reasonable because they fall within the range of fees customarily charged by attorneys and paralegals with comparable levels of experience at comparable law firms in the Portland area. The rates for the principal attorneys and paralegal working on this matter are as follows:

| Name | Position | Current Rate[2] | Fees |
|------|----------|-------------|------|
| Brenda K. Baumgart | Partner | $688.50 | $7,016.75 |
| Melissa J. Healy | Partner | $544.00 | $13,529.45 |
| Matthew A. Tellam | Associate | $416.50 | $19,226.15 |
| Angela M. Gifford | Paralegal | $327.25 | $1,406.76 |

Reasonable rates are determined by looking at the prevailing rate in the relevant community for similar work performed by attorneys of comparable skill, experience, and reputation. *See Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997). The Court has directed that

---

[2] Before December 1, 2024, the hourly rates for Legacy's counsel were $620.50 for Ms. Baumgart, $501.50 for Ms. Healy, $348.50 for Mr. Tellam, and $306.00 for Ms. Gifford. This table includes hours worked at both the previous and current rates (which went into effect on December 1, 2024), and the fees charged reflect work using both rates.

it will use the "most recent Oregon State Bar Economic Survey as its initial benchmark" in determining the reasonable hourly rates.  *See* Practice Tip, Local Rule 54-3 (referring to U.S. District Court, District of Oregon, *Message From the Court Regarding Attorney Fee Petitions* (Nov. 21, 2024), https://www.ord.uscourts.gov/index.php/rules-orders-and-notices/public-notices/355-fee-petitions).  The hourly rates in this case should be set in the Portland area as that is where Legacy's counsel and their law firm, Stoel Rives, are based.  *Arthur v. Murphy Co.*, No. CIV. 10-3142-CL, 2012 WL 3010996, at *6-9 (D. Or. July 23, 2012).[3]

Brenda K. Baumgart, Melissa J. Healy, and Matthew A. Tellam are each civil litigators, and their rates reasonably reflect their experience in litigation.  (Healy Decl. ¶¶ 5-7.)  Angela M. Gifford is a longtime paralegal, and her rate reasonably reflects her experience.  (*Id.* ¶ 8.)

As reported in the 2022 Oregon State Bar ("OSB") Economic Survey, Ms. Baumgart's **current**[4] rate of $688.50 falls below the 95th percentile of **2021** billing rates for private practice civil litigation (defendant).  (*Id.* ¶ 9, Ex. B at 44 (Table 37).)  Ms. Baumgart's **current** rate also falls below the **2021** 95th percentile rate for attorneys in downtown Portland admitted to practice with 21-30 years' experience.  (*Id.* at 43 (Table 36).)  Ms. Baumgart's **current** rate is also consistent with the typical range of rates found by Morones Analytics, LLC, which conducted a 2024 survey of commercial litigation rates in Portland ("Morones Survey").  (*Id.* ¶ 10, Ex. C at

---

[3] Any award of fees or survey of fees must reflect current conditions.  The market for private practice legal services experiences regular price inflation, just as the market for consumer products does.  For each of the past 15 years, law firm rates have increased by between 2% and 6% a year.  *See* "2024 Report on the State of the US Legal Market," Thomson Reuters Institute & Georgetown University Law Center on Ethics and the Legal Profession (2024), https://www.thomsonreuters.com/en-us/posts/wp-content/uploads/sites/20/2024/01/State-of-US-Legal-Market-2024.pdf.

[4] Because Legacy's counsels' current rates are reasonable, their previous rates (which were lower) are also reasonable.

Page 4 – DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES
127521539.3 0015023-00506

2.)  The Morones Survey found that the average rate **in 2024** for Portland commercial litigation attorneys with 20 to 29 years of experience was $650 per hour.  (*Id.*)

As reported in the 2022 OSB Economic Survey, Ms. Healy's **current** rate of $544.00 falls below the 95th percentile of **2021** billing rates for private practice civil litigation (defendant), and is much closer to the mean and median rates.  (*Id.* ¶ 9, Ex. B at 44 (Table 37).) Ms. Healy's **current** rate also falls below the **2021** 95th percentile rate for attorneys in downtown Portland admitted to practice with 13 to 15 years of experience, and is again much closer to the mean and median rates.  (*Id.* at 43 (Table 36).)  Ms. Healy's **current** rate is also consistent with the typical range of rates found by the Morones Survey.  (*Id*. ¶ 10, Ex. C at 2.) The Morones Survey found that the average rate **in 2024** for Portland commercial litigation attorneys with 10 to 19 years of experience was $556 per hour.  (*Id.*)

As reported in the 2022 OSB Economic Survey, Mr. Tellam's **current** rate of $416.50 falls below the mean rate and is essentially identical to the median rate of **2021** billing rates for private practice civil litigation (defendant).  (*Id.* ¶ 9, Ex. B at 44 (Table 37).)  Mr. Tellam's **current** rate is also only slightly above the median and mean rates for attorneys in downtown Portland admitted to practice with 4 to 6 years' experience.  (*Id.* at 42 (Table 36).)  Mr. Tellam's **current** rate is also consistent with the typical range of rates found by the Morones Survey.  (*Id*. ¶ 10, Ex. C at 2.)  The Morones Survey found that the average rate in **2024** for Portland commercial litigation attorneys with 9 or fewer years of experience was $454 per hour.  (*Id.*)

Angela Gifford is a paralegal with extensive experience in complex litigation matters, and her rate reasonably reflects her experience.  (*Id.* ¶ 8.)  Her **current** rate of $327.50 is well below the average rate of $415 and the median rate of $425 for the Pacific region, as reported in

the 2024 ALM/IMPA Annual Compensation Survey for Paralegals, Practice Support

Professionals, and Managers.  (*Id.* ¶ 11, Ex. D at 72.)

In addition, Stoel Rives rates have been found reasonable in other recent cases.  (*Id.* ¶ 12,

Ex. E (attaching Petition for Attorney Fees and Costs, *Easterday Dairy, LLC v. Fall Line*

*Capital, LLC*, No. 22-CV-19843 (Morrow Cnty. Cir. Ct. Sept. 26, 2022), and Opinion Letter Re:

Defendant Easterday's Request for Prevailing Party Fee, Attorney Fees and Costs, *Easterday*

*Dairy, LLC v. Fall Line Capital, LLC*, No. 22-CV-19843 (Morrow Cnty. Cir. Ct. Feb. 15, 2023)

(determining that that Stoel Rives attorney rates of $760 and $580 and paralegal rate of $405

were reasonable); Farmers Defendants-Appellants' Petition for Attorneys' Fees and Costs,

*Mohabeer v. Farmers Ins. Exch.*, No. A172057 (Or. App. Apr. 6, 2022), and Order Allowing

Attorney Fees and Costs, *Mohabeer v. Farmers Ins. Exch.*, No. A172057 (Or. App. Sept. 13,

2022) (determining that Stoel Rives attorney rates of $585 and $435 were reasonable); *SPF*

*Brewery Blocks, LLC v. Art Inst. of Portland, LLC*, No. 3:18-CV-1749-MO, 2019 WL 1497029,

at *2 (D. Or. Apr. 4, 2019) (determining that Stoel Rives attorney rate of $525 was reasonable);

*Schnitzer Steel Indus., Inc. v. Cont'l Cas. Corp.*, No. 3:10-CV-01174-MO, 2014 WL 6063976, at

*5-6 (D. Or. Nov. 12, 2014) (finding Stoel Rives attorney rates of $480 and $560 reasonable),

*aff'd*, No. 14-35793, 2016 WL 3059067 (9th Cir. May 31, 2016)).)

### D.   The Time Spent on This Matter Was Reasonable and Necessary.

Legacy counsel's hours on this case were reasonable and proportionate to the needs of the

case.  The fees incurred in this case reflect thoughtful staffing and a careful division of work

between timekeepers at different experience levels to maximize efficiency.  (Healy Decl. ¶ 2.)

The fees also reflect the unusual backdrop against which Legacy filed the Motion – namely, that

Plaintiff's counsel represents dozens of other former employees in COVID-19 vaccine cases

against Legacy, and engaged in the conduct described in the Motion in both this case and over 20

others.  (*Id.*)  Therfore, to ensure that Legacy presented a complete picture to the Court, it was

necessary for defense counsel to review the entire course of events in the relevant cases.  (*Id.*)

Legacy's fees in preparing the Motion and opposing Plaintiff and counsel's unsuccessful efforts

to contest it are $34,990.68.  Legacy's fees in preparing this motion for attorneys' fees and its

accompanying documentation are $6,188.43.  Legacy therefore requests that the Court issue an

order awarding reasonable attorneys' fees in the total amount of $41,179.11.

### III.    CONCLUSION

For the reasons set forth above, Legacy is entitled to recover the fees reasonably incurred

in bringing the Motion and this motion.  Accordingly, Legacy respectfully requests that the Court

order Plaintiff and his counsel to reimburse Legacy for its fees in the amount of $41,179.11.

DATED:  January 24, 2025                         STOEL RIVES LLP

                                                 _____/s/ Melissa J. Healy_____
                                                 BRENDA K. BAUMGART, OSB No. 992160
                                                 brenda.baumgart@stoel.com
                                                 MELISSA J. HEALY, OSB No. 102176
                                                 melissa.healy@stoel.com
                                                 MATTHEW A. TELLAM, OSB No. 194612
                                                 matt.tellam@stoel.com

                                                 *Attorneys for Defendant Legacy Health*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

WILLIAM MATTHEWS,

        Plaintiff,

     v.

LEGACY HEALTH,

        Defendant.

_____

Case No. 6:24-cv-00592-MC

OPINION AND ORDER

MCSHANE, Judge:

     Before the Court is Defendant's request for $41,179.11 in attorney fees. Def.'s Mot. Att'y Fees, ECF No. 37 ("Fees Motion"). The request is in response to the Court's decision on December 26, 2024, to award reasonable fees and costs as a sanction against Plaintiff's counsel. Op. and Order, ECF No. 35. For the reasons explained below, the Court GRANTS IN PART and DENIES IN PART the Fees Motion, and awards $23,683.77 in total fees.

## PROCEDURAL BACKGROUND

     Plaintiff originally filed this action in state court on October 3, 2023, asserting one state law religious discrimination claim. Notice Removal Ex. 1, at ¶¶ 12–17, ECF No. 1. Defendant moved to dismiss the complaint for insufficient factual allegations, and the parties agreed that Plaintiff would file a factually supplemented amended complaint. Notice Removal Ex. 3; Healy Decl. Ex. 1, ECF No. 6; Healy Decl. ¶¶ 7–8, ECF No. 30. The amended complaint that Plaintiff filed, however, included a host of new claims and legal theories under both state law and Title VII. Ex. 11, ECF No. 3. After asking Plaintiff to withdraw the amended complaint and refile one

that aligned with their agreement, Defendant removed the action to federal court and moved to

dismiss all but Plaintiff's failure-to-accommodate claims. Healy Decl. ¶ 9; Def.'s Mot. Dismiss

1–2, n.1, ECF No. 5.

The Court granted Defendant's motion, finding the new theories insufficiently pled and

the new Title VII claims time barred. Op. and Order, ECF No. 23. The Court dismissed the new

federal claims with prejudice, and the new state claims without prejudice. *Id.* at 16. Plaintiff was

given 30 days to file an amended complaint, but Plaintiff chose not to do so. Sched. Order, ECF

No. 24. When the Court set a Rule 16 conference to reinstate a case schedule, the parties

conferred over new deadlines and jointly proposed a schedule that allowed renewed

opportunities for filing an amended complaint and answer. Fed. R. Civ. P. 26(a)(1) Agreement,

ECF No. 26; Healy Decl. ¶ 3. The Court adopted the parties' schedule, and Plaintiff filed a

second amended complaint ("SAC"). Sched. Order, ECF No. 27; Am. Compl., *stricken*, ECF No.

28. The SAC, however, again ignored the parties' agreement, and it continued to reference

claims previously dismissed by the Court. Defendant alerted Plaintiff's counsel to the problem

prior to filing, but counsel resolved to file it anyway. Healy Decl. ¶¶ 4–5, Exs. 1–2.

Exasperated, Defendant moved for sanctions and an Order to Show Cause.[1] Def.'s Mot.

Order Show Cause, ECF No. 29 ("Sanctions Motion"). Defendant argued that "the sequence of

events in this case, coupled with the fact that Plaintiff's counsel has engaged in similar conduct

in numerous other cases within this District, warrants a different approach." *Id.* at 2. Seeking

further intervention, Defendant "request[ed] that the Court take additional steps to deter

---

[1] In total, Plaintiff's counsel has filed more than 40 lawsuits on behalf of almost 100 individuals against Defendant Legacy Health. Healy Decl. ¶ 11. Defendant's counsel has spent hours conferring with Plaintiff's counsel over frivolous claims and sloppy pleadings. *Id.* at ¶¶ 11–16. Despite that, Plaintiff's counsel continue to "misuse[] the amendment process to muddy the claims at issue, revisit matters the Court has already conclusively addressed, delay the proceedings, and unnecessarily increase litigation costs." *Id.* at ¶ 11.

Plaintiff's counsel's improper conduct by ordering counsel to appear and explain the SAC, striking the SAC in its entirety, and awarding sanctions to Legacy." *Id.* at 3. The Court, having presided over this litigation as well as many other similar cases with Plaintiff's counsel, agreed with Defendant's characterization of the issue and partially granted the Sanctions Motion. Op. and Order 2, ECF No. 35. In lieu of holding a Show Cause hearing, the Court struck the SAC and awarded Defendant its reasonable costs and fees. *Id.* at 3.

Defendant now moves the Court to assess its fee request.[2] Defendant requests $41,179.11, representing $34,990.68 in fees incurred bringing the Sanctions Motion and $6,188.43 in fees incurred preparing the Fees Motion. Fees Mot. 2. Defendant certifies that the parties conferred regarding this Motion, and that Plaintiff opposes. *Id.* at 1. Plaintiff, however, did not to file a response.

## **DISCUSSION**

District courts have inherent authority to sanction a party who willfully violates court orders or acts in bad faith. *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). "Willfulness" does not demand proof of mental intent or an improper motive; rather, it is enough that a party acted deliberately. *Id.* Here, given counsel's continuous, well-documented disregard for court rulings and conferrals, the Court can only conclude that such violations are deliberate.

Nonetheless, the district court has a duty to assure that any fees awarded are fair and proper, even in the absence of an objection. *See, e.g.*, *Relion, Inc. v. Hydra Fuel Cell Corp.*, No. CV06-607-HU, 2007 WL 2984124, at *1 (D. Or. Oct. 10, 2007). In this Circuit, a determination of reasonable fees begins with the "lodestar" method. *E.g.*, *Fischer v. SJB–P. D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). That calculation multiples a reasonable hourly rate by the number of

---

[2] Defendant is not seeking any recoverable costs. Fees Mot. n.1.

Shaddy-Farnsworth Decl
Ex E Page 10 of 62

hours reasonably expended on the litigation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). From there, the district court may adjust upward or downward based on a variety of factors. *Id.* (citing *Hensely v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Although the district court's calculation of an award need not be done with precision, some indication of how it arrived at its figures and the amount of the award is necessary." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1211 (9th Cir. 1986). The burden is on the requesting party to submit evidence that supports the hours and rates claimed. *Hensely*, 461 U.S. at 433–34.

## I.  **Reasonable Hourly Rates**

A "reasonable" hourly rate is set according to the prevailing market rates in the relevant community, taking into consideration the attorney or paralegal's experience, skill, and reputation. *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). As an initial benchmark for comparison, this District uses the most recent Oregon State Bar Economic Survey. *See* Oregon State Bar 2022 Economic Survey ("OSB Survey") (available at https://www.osbar.org/_docs/resources/Econsurveys/22Economic Survey.pdf). The OSB Survey reports regional hourly rates in two ways: based on practice area, regardless of experience and based on years of experience, regardless of practice area.

Generally, "the relevant community" refers to the jurisdiction where the court sits. *See*, *e.g.*, *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). However, here, Defendant asks this Court to consider Portland's rates, rather than Eugene's. Given that Defendant Legacy Health is headquartered in Portland, the Court finds it was reasonable for Defendant to employ a Portland-based legal team. Portland's rates are therefore an appropriate comparator.[3]

---

[3] According to the OSB Survey, Portland attorneys practicing defendant's side civil litigation in 2021 billed hourly rates that ranged from an average of $442 to a 95th percentile of $743. OSB Surv. 44. Among Portland attorneys

Defendant requests fees for work performed by two partners, an associate, and a paralegal.[4] Ms. Baumgart, the lead attorney in this matter, is a partner at Stoel Rives. Healy Decl. ¶ 5, ECF No. 38. She was admitted to the Oregon State Bar in 1999 and has been an active litigator for over 25 years, achieving recognition for her success in employment litigation. *Id.* She requests an hourly rate of $688.50. *Id.* Ms. Healy, also a partner at Stoel Rives, has maintained an active litigation practice for over 14 years, with a focus on labor and employment-related matters. *Id.* at ¶ 6. She requests an hourly rate of $544.00. *Id.* Mr. Tellam was admitted to the Oregon State Bar in 2019 and joined Stoel Rives as an associate in 2022. *Id.* at ¶ 7. He requests an hourly rate of $416.50. *Id.* Not accounting for inflation, Ms. Baumgart and Ms. Healy seek rates that fall above the OSB Survey average but below the 95th percentile for comparable attorneys performing similar work in 2021. Mr. Tellam's requested rate, although higher than the average rate for attorneys with his experience level, is below the average market rate for Portland civil litigators. The Court finds those rates reasonable in light of the partners' experience and the nature of this litigation.

Ms. Gifford is a paralegal with over 25 years of experience. She requests an hourly rate of $327.25. The OSB Survey does not provide for average paralegal rates. However, judges in this district have held that reasonable hourly rate for a paralegal should equal that of a first-year associate. *See Bird v. Or. Comm'n for the Blind*, No. 3:18-CV-01856-YY, 2021 WL 7709970, at

---

with 21 to 30 years of experience, the average hourly rate was $447 and the 95th percentile rate was $697. *Id.* at 43. For attorneys with 13 to 15 years of experience, the average rate was $416 and the 95th percentile was $733. *Id.* For four to six years of experience, the average rate dropped to $312 and the 95th percentile to $495. *Id.* at 42. For zero to three years of experience, the average billing rate was $310 and the 95th percentile billed at $538.

[4] All of the requested rates increased over the relevant period. Brenda Bamgart's hourly rate was $620.50 before December 1, 2024, and $688.50 after. Healy Decl. ¶ 5, ECF No. 38. Melissa Healy's hourly rate was likewise $501.50, then $544.00. *Id.* at ¶ 6. Matthew Tellam's hourly rate was $348.50, then $416.50. *Id.* at ¶ 7. Angela Gifford's hourly rate was $306.00, then $327.25. *Id.* at ¶ 8. For efficiency, the Court assesses the reasonableness of the requested rates at their higher measure.

Shaddy-Farnsworth Decl
Ex E Page 12 of 62

*3 (D. Or. Aug. 11, 2021); *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1248 (D. Or. 2013). In 2021, the average hourly rate for new associates was $310. Considering inflation and Ms. Gifford's experience, the Court finds her requested rate reasonable.

## II.  **Reasonable Number of Hours**

A "reasonable" number of hours is the amount that could reasonably have been billed to a private client. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (quoting *Moreno*, 534 F.3d at 1111). Consistent with that, fee petitions should reflect a good faith effort to exclude excessive, redundant, or otherwise unnecessary fees. *Hensely*, 461 U.S. at 434. Courts are permitted to reduce hours where the case was overstaffed and hours are duplicated, or where the hours expended are deemed excessive or otherwise unnecessary. *Id.* After reviewing Defendant's time logs, the Court finds that 13.7 hours were reasonably expended preparing the Fees Motion, while only half of the 78.1 hours were reasonably expended preparing the Sanctions Motion.

For the Fees Motion, the bulk of the work—10.20 hours of evaluating the issues, researching, drafting, and revising—was accomplished by Mr. Tellam, at the lowest hourly rate. Healy Decl. Ex. A, at 2. Ms. Baumgart and Ms. Healy spent 3 hours reviewing and revising the Motion, with final preparations being completed by Ms. Gifford in 30 minutes. *Id.* The Motion itself is under seven pages. However, the adjoining 72-page declaration contains descriptions of counsel's skill level, detailed work ledgers, billing rate comparisons, and prior fee petitions. Given the length of Defendant's submissions and the economic division of labor, the Court finds that 13.7 hours was a reasonable time expenditure for the Fees Motion.

Contrarily, Defendant claims it expended 78.1 hours pursuing the Sanctions Motion—

Shaddy-Farnsworth Decl
Ex E Page 13 of 62

over five times the number of hours spent on the Fees Motion. Healy Decl. Ex. A, at 1–2. The

Sanctions Motion itself is just shy of 16 pages, with the actual argument section occupying only

six pages. The adjoining declaration is 119 pages, however roughly 79 pages are redlined

amended complaints from Plaintiff and 26 pages are email correspondence between the parties.

According to the ledger, Mr. Tellam spent 39.70 hours, Ms. Baumgart spent 10.10 hours, Ms.

Healy spent 24.30 hours, and Ms. Gifford spent four hours between the Motion, response, and

reply. *Id.* Defendant justifies that expenditure by arguing it was necessary for counsel review the

entire course of events in this matter and relevant cases in order to ensure that the Court received

a complete picture. To an extent, Defendant's point is well-taken. The efficacy of the Sanctions

Motion depended on Defendant's ability to establish a pattern of poor prior dealings with

opposing counsel. To do so, Defendant had to sift through past communications, track and

illustrate opposing counsel's conduct in other cases, and marshal emails, documents, and

evidence to support those claims. That is not a brief task. Nor, however, is it a legally

challenging task. The Sanctions Motion does not engage with novel or difficult legal questions;

rather, it is essentially a historical accounting of the record, on which counsel's deficiencies are

apparent. How two partners, with a combined 40 years of experience, were needed for an

additional 34.40 hours of labor, on top of Mr. Tellam's 39 hours, is lost on this Court. Because

Defendant has failed to demonstrate that 78.1 hours were reasonably necessary to pursue the

Sanctions Motion, the Court concludes that half of those hours reflect excessive, redundant, and

otherwise unnecessary expenditures.

 For the Fees Motion, the Court awards $6,188.43. For the Sanctions Motion, the Court

grants half of the requested amount, for a total award of $17,495.34 in attorney fees. To be clear,

sanctions were granted as a deterrent to Plaintiff's counsel and as recompense for efforts unfairly

Shaddy-Farnsworth Decl
Ex E Page 14 of 62

exerted by Defendant. Mr. Matthews is not and should not be held responsible for his counsel's incompetence with respect to this matter.

## **CONCLUSION**

For the reasons provided above, Defendant's Motion for Attorney Fees, ECF No. 37, is GRANTED IN PART and DENIED IN PART. Defendant is awarded the sum of $23,683.77 as a sanction against Plaintiff's counsel: Rugged Law, Inc.

IT IS SO ORDERED.

DATED this 26th day of March 2025.

_____s/Michael J. McShane_____
Michael J. McShane
United States District Judge

9/26/2022 4:40 PM
22CV19843

1

2

3

4                    IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                         FOR THE COUNTY OF MORROW

6   EASTERDAY DAIRY, LLC, a Washington
    limited liability company,
7
                       Plaintiff,                      No. 22CV19843
8
         v.                                            PETITION FOR ATTORNEY FEES AND
9                                                      COSTS
    FALL LINE CAPITAL, LLC a Delaware
10  limited liability company; CANYON FARM,
    LLC, a Delaware limited liability company;
11  and CANYON FARM II, LLC, a Delaware
    limited liability company,
12
                       Defendants.
13

14          Pursuant to the form prescribed by UTCR 5.080, ORCP 54 A(3), and ORCP 68, the

15  undersigned attorney offers the following facts and authority to support of an award of

16  reasonable and necessary attorney fees, costs, and disbursements.  This Petition is also

17  supported by the Declaration of Amy Edwards filed herewith.

18          Defendants Fall Line Capital, LLC ("Fall Line"), Canyon Farm, LLC ("Canyon

19  Farm"), and Canyon Farm II, LLC ("Canyon Farm II") (collectively, "Defendants") are

20  entitled to recover attorney fees, costs, and disbursements pursuant to the following facts,

21  statutes, and rules:

22          1.      Defendants are entitled to an award of attorney fees and costs as the prevailing

23  party under ORCP 54 A(3) and pursuant the Amended and Restated Easement (the

24  "Easement") between Canyon Farm II and Plaintiff Easterday Dairy, LLC ("Plaintiff"), ¶ 8;

25  the Promissory Note, executed by Plaintiff in favor of Canyon Farm, dated March 1, 2019

26

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503.224.3380   Fax 503.220.2480

1   (the "Note"), § 19; the Trust Deed executed by Plaintiff in favor of Canyon Farm, ¶ 6.2(a)

2   (the "Trust Deed"); and ORS 20.096, as applicable.

3       **Background:** Plaintiff filed this action on June 16, 2022, seeking preliminary and

4   injunctive relief against Defendants.  After Plaintiff's temporary restraining order (the

5   "TRO") was dissolved by the Court on July 6, 2022, and before the deadline for Defendants

6   to file a response to the Complaint, Plaintiff filed a Notice of Voluntary Dismissal.  Before

7   judgment was entered, Defendants filed a Claim for Attorney Fees.  The Count entered a

8   General Judgment dismissing Plaintiff's claims and providing that Defendants were the

9   "prevailing parties under ORCP 54 A(3) and may request attorney fees and costs * * *

10  pursuant to ORCP 68.

11      **Relevant Authority:**  The Easement, Note, and Trust Deed, and Post-Closing

12  Agreement provide that the prevailing party in any dispute between Plaintiff and Defendants

13  related to the Easement, Note, Trust Deed, and Post-Closing Agreement (collectively, the

14  Agreements") shall be entitled to an award of attorney fees and costs.  (Complaint, Ex. 6 at

15  § 19 (Note); Ex. 7 at ¶ 6.2(a) (Trust Deed); Ex. 10 at ¶ 8 (Easement).)  Plaintiff's Complaint

16  sought relief related to the Agreements (*See, e.g.,* Complaint ¶¶ 13, 19, 29-35 (seeking

17  rescission of Easement), 40-45 (seeking reformation of Note and Trust Deed), 46-49 (seeking

18  declaratory relief related to Easement), 51-59 (seeking injunctive relief related to Easement).

19      Further, Defendants complied with the requirements of ORCP 68 C when they filed

20  their Claim for Attorney Fees, even though Plaintiff had voluntarily dismissed its claims,

21  because the time for Defendants to respond to the Complaint had not yet passed.  When a

22  plaintiff voluntarily dismisses its action, the defendant is the prevailing party and the

23  judgment may include costs and attorney fees as provided by contract, statute, or rule.

24  ORCP 54 A(3); *see also, Attaway, Inc. v. Saffer*, 95 Or App 481, 483, 770 P 2d 596 (1989)

25  (after plaintiff dismissed action, "trial court had authority to include in the judgment of

26  dismissal any costs and disbursements, including attorney fees").  ORCP 68 C(2)(a) further

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503.224.3380   Fax 503.220.2480

Page 2 - PETITION FOR ATTORNEY FEES AND COSTS

116644130.1 0073708-00002

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380  Fax 503.220.2480

1    provides that a party seeking attorney fees must "allege the facts, statute, or rule which

2    provides a basis for the attorney fees in a pleading filed that party."  Oregon courts have held

3    that a defendant satisfies the pleading requirement in ORCP 68 C(2)(a) if it alleges a claim

4    for attorney fees in a pleading filed after a plaintiff's voluntarily dismissal if the pleading was

5    filed before the deadline for the defendant to file its answer.  *Oakleaf Mobile Home Park v.*

6    *Mancilla*, 189 Or App 458, 462-63, 75 P3d 908 (2003) (holding that defendant complied

7    with ORCP 68 C when he filed his answer at FED first appearance as required by FED

8    summons and ORS 105.113); *Attaway,* 95 Or App. at 484 (defendant's submission of motion

9    for fees after plaintiff voluntarily dismissed claims was not fatal to request for fees because

10   defendant had no opportunity to file responsive pleading before voluntary dismissal); *see*

11   *also, Lumbermen's v. Dakota Ventures*, 157 Or App. 370, 378, 971 P2d 430 (1998) (holding

12   that, in order to meet requirements of ORCP 68 C, party should allege right to attorney fees

13   "at the first appropriate opportunity").

14        Defendants are also entitled to their attorney fees related to filing this fee petition.

15   *See, e.g., Lekas v. Lekas*, 23 Or App 601, 609-10, 543 P2d 308 (1975) (holding that trial

16   court could award fees on remand for time expended by prevailing party's counsel in

17   presenting evidence related to its fee petition); *McElmurray v. U.S. Bank National*

18   *Association*, Civil No. 04-642-HA, 2008 US Dist. Lexis 35905, *11 (April 30, 2008)

19   (allowing fees for preparation of the fee petition and responding to defendant's opposition to

20   fee petition).

21                    **Detailing of Fees and Costs**

22        2.    The legal fees claimed for the hours and services rendered in this matter from

23   June 17, 2022 through September 26, 2022 for each attorney and the hourly rate for each are

24   set forth in detail in Exhibits 1-3 to the Edwards Declaration.  The total hours and fees

25   claimed may be summarized as follows:

26   */ / / / /*

Page 3 - PETITION FOR ATTORNEY FEES AND COSTS

116644130.1 0073708-00002

| NAME | POSITION | HOURLY RATE | NO. OF HOURS | FEES |
|---|---|---|---|---|
| Amy Edwards | Attorney | $760 | 31.70 | $24,092.00 |
| Crystal Chase | Attorney | $580 | 0.70 | $406.00 |
| Jamie Carbone | Paralegal | $405 | 2.70 | $1,093.50 |
| David Suchar (DES) | Attorney | $575 | 7.60 | $4,370.00 |
| Jonathan Septer (JRS) | Attorney | $495 | 72.40 | $35,838.00 |
| Evan Nelson (EAN) | Attorney | $320 | 33.10 | $10,592.00 |
| Carly Johnson (CJ) | Attorney | $280 | 3.10 | 868.00 |
| Michael Collins (MC) | Attorney | $300 | 28.20 | $8,460.00 |
| **TOTAL FEES** | | | | **$85,719.50** |

3.    The charges summarized above, from June 17, 2022 through September 26, 2022, are reasonable and necessary litigation expenses and costs and disbursements and are not included in the hourly rates set forth in paragraph 2, above, specifically filing fees, service fees, and delivery charges.  The specific charges and the dates they were incurred are set forth in detail in Exhibit 3 at 3.  The total amount for these charges is $705.00.

4.    ORS 20.075 provides the factors governing the court's exercise of discretion to award attorney fees.  The specific factors supporting defendants' requested attorney fees are as follows:

a.    <u>ORS 20.075(l)(b):  The objective reasonableness of defendants' legal positions and the positions taken by defendants and their attorneys during the proceedings, in contrast to the positions taken by plaintiff</u>.  The vast majority of the

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503.224.3380    Fax 503.220.2480

Page 4 - PETITION FOR ATTORNEY FEES AND COSTS
116644130.1 0073708-00002

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503.224.3380   Fax 503.220.2480

1      fees incurred in the case relate to Defendants' efforts to dissolve the temporary

2      restraining order, which were ultimately successful.  (*See* Order Vacating TRO (ent.

3      July 14, 2022).)

4             b.     ORS 20.075(2)(a):  The time and labor required, the novelty and

5      difficulty of the questions involved, and the skill needed. Plaintiff's TRO imposed

6      significant and burdensome requirements on Defendants, their tenant, and the subject

7      property.  As such, responding to it required immediate action, including legal

8      research and fact development, drafting the motion to dissolve the TRO and related

9      documents, and preparing for and arguing the motion, almost all of which occurred

10     within a period of less than two weeks.  Furthermore, the TRO implicated both state

11     court procedural issues as well as complicated regulatory matters related to the

12     underlying confined animal feeding operation permit issued and administered by the

13     Oregon Department of Agriculture.

14            c.     ORS 20.075(2)(c):  Fees customarily charged in the locality for similar

15     services.  The Oregon State Bar (the "OSB") conducted an economic survey of the

16     membership of the OSB in 2017.  As part of its survey, the OSB gathered information

17     regarding the hourly rates billed by litigators in Oregon, filtered by (1) geographical

18     region, (2) total years admitted to practice, and (3) firm size.  Attached as Exhibit 4 to

19     the Edwards Declaration are excerpts from the Oregon State Bar 2017 Hourly Rate

20     Survey ("OSB 2017 Survey").  The rates charged by Stoel Rives lawyers and are

21     consistent with rates charged by members of the Oregon State Bar ("OSB") in

22     downtown Portland, with the same amount of experience, in firms of the same size.

23     Stoel Rives comprises nearly 400 attorneys across seven states in 11 separate offices.

24     The Portland office is the largest.  The rates charged by Maslon LLP lawyers are

25     comparable to similar sized firms in Portland, Oregon.  The rates charged by Collins

26

Page 5 - PETITION FOR ATTORNEY FEES AND COSTS

116644130.1 0073708-00002

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380   Fax 503.220.2480

1     Law Firm, LLC reflect the lower rates of firms outside the Portland metropolitan

2     area.

3          d.      ORS 20.075(2)(g):  The experience, reputation, and ability of the

4     lawyers performing the services.  Stoel Rives is one of the most respected law firms

5     in Oregon and nationwide.  The firm achieved 34 prestigious national tier rankings in

6     the 2017 *U.S. News – Best Lawyers*® "Best Law Firms" survey.  The Stoel Rives

7     litigation team has been recognized by *Chambers USA: America's Leading Lawyers*

8     *for Business*®, and the 2016 *Chambers* guide ranks 86 of Stoel Rives' lawyers among

9     the best in their region.  *Best Lawyers*® lists 143 of Stoel Rives' lawyers in 68 legal

10    practice categories in its 2017 directory and selected 23 Stoel Rives lawyers as 2017

11    "Lawyers of the Year" in their markets and practice areas. Maslon LLP provides

12    strategic legal counsel to the business community in Minnesota and nationwide.[1]

13    Over 25 percent of Maslon Attorneys were selected for inclusion in the Best Lawyers

14    in America© 2023 and Maslon was recognized as a leading Minnesota firm for

15    General Commercial Litigation in *Chambers USA 2022*.  Collins Law Firm, LLC is

16    an A rated firm by Martindale-Hubbell.

17          i.      **Amy Edwards** is a partner at Stoel Rives LLP.  She received

18                  her B.A. in 1994 from Northwestern University and her J.D. with high honors

19                  from the University of Washington School of Law in 2001.  She was admitted

20                  to the Oregon State Bar in 2001 and is also a member of the U.S. District

21                  Court for the District of Oregon, the Ninth Circuit Court of Appeals, and the

22                  State of Washington.  Ms. Edwards was a summer associate at Stoel Rives in

23                  2000 and joined the firm in 2002 after completing a clerkship with Justice

24    ────────────────

25    [1] Although attorneys from Maslon did not appear in the case, as outlined in the fee
      detail, they contributed a significant amount of work to Defendants' efforts to dissolve the
      TRO.  Because Plaintiff dismissed the case just weeks after it was filed and a day after the
26    TRO was dissolved, they did not have the opportunity to seek *pro hac vice* admission.

Page 6 - PETITION FOR ATTORNEY FEES AND COSTS

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380    Fax 503.220.2480

1    Bobbe J. Bridge of the Washington Supreme Court.  She focuses her practice

2    on complex litigation, including real property and lender/creditor cases.

3    Ms. Edwards was included in *The Best Lawyers in America©* (currently:

4    Commercial Litigation), 2015-2023.  Ms. Edwards was also selected as one of

5    "America's Leading Lawyers for Business" (Oregon) by *Chambers USA*

6    (currently: Litigation: General Commercial), 2020-2022.  During the course of

7    this litigation Ms. Edwards' rate was $760.00 per hour.  According to the

8    Oregon State Bar 2017 Economic Survey ("OSB 2017 Survey"), (Edwards

9    Dec., Ex. 4), attorneys in Portland reported hourly rates at the 95th percentile

10    of $525.00 in 2017 for business/corporate litigation, and attorneys in the

11    Portland area at Ms. Edwards' experience level (21-30 years) reported hourly

12    rates at the 95th percentile of $525.00.[2]

13    **ii.    Crystal Chase** is a partner at Stoel Rives LLP.  She received

14    her B.S. in 2006 from Georgetown University, *magna cum laude*, Phi Beta

15    Kappa, and her J.D. in 2009 from Lewis & Clark Law School, *summa cum*

16    *laude*.  She was admitted to the Oregon State Bar in 2009 and is also a

17    member of the U.S. District Court for the District of Oregon and the Ninth

18    Circuit Court of Appeals.  Ms. Chase was a summer associate at Stoel Rives

19    in 2008 and joined the firm in 2011 after completing a clerkship with Justice

20    Robert D. Durham of the Oregon Supreme Court.  Her practice focuses on

21    real estate and environmental law matters and appellate matters.  She was

22    recognized by Best Lawyers in America for the areas of Appellate Practice

23    and Real Estate Litigation in 2022-2023.  During the course of this litigation

24

25    _____

    [2] Consideration of rates in the Portland metropolitan area is reasonable even though
    this case is in Morrow County because the case involved complex legal issues and both
26    parties engaged law firms from the Portland area.  (Edwards Dec., ¶ 7.)

Page 7 - PETITION FOR ATTORNEY FEES AND COSTS

116644130.1 0073708-00002

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380  Fax 503.220.2480

1    Ms. Chase's rate was $580.00 per hour.  According to the OSB 2017 Survey,

2    attorneys in Portland reported hourly rates at the 95th percentile of $525.00 in

3    2017 for business/corporate litigation, and attorneys in the Portland area at

4    Ms. Chase's experience level (13-15 years) reported hourly rates at the 95th

5    percentile of $460.00.

6        **iii.    Jamie Carbone** is a litigation paralegal at Stoel Rives.  She

7    joined Stoel Rives in 1996 and, prior to that, was a litigation paralegal in

8    Chicago, Illinois.  She has over 30 years of experience.  Her rate is $400 an

9    hour.

10        **iv.    David Suchar** is a partner at Maslon LLP, where he chairs the

11    firm's Construction & Real Estate Litigation Group.  He received his B.A.

12    with high honor in 1998 from DePaul University and his J.D., cum laude,

13    from Georgetown University Law Center in 2002.  He was admitted to the

14    Minnesota State Bar in 2011 and is also a member of the U.S. District Court

15    for the District of Minnesota, the Northern District of Georgia, the Central

16    District of Illinois, the Northern District of Illinois, the Northern District of

17    Indiana, and the State of Illinois (admitted in 2002).  Mr. Suchar served as an

18    Assistant U.S. Attorney (federal prosecutor) for the Northern District of

19    Georgia from 2008-11. He was an associate in the Litigation Group at

20    Kirkland & Ellis LLP in Chicago from 2004-2008 and a summer associate at

21    Altheimer & Gray in Chicago in 2001.  He focuses his practice on

22    construction, real estate, and insurance coverage litigation.  Mr. Suchar was

23    included in the Minnesota Super Lawyers® List, 2020-2022 and The Best

24    Lawyers in America©, 2021-2023.  Mr. Suchar was also selected as one of

25    "America's Leading Lawyers for Business" (Minnesota) by Chambers USA

26    (Construction), 2018-2022, and as one of the top four under-45 construction

Page 8 - PETITION FOR ATTORNEY FEES AND COSTS

116644130.1 0073708-00002

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380    Fax 503.220.2480

lawyers in the United States by Who's Who Legal (2019-2022).  During the course of this litigation Mr. Suchar's rate was $575.00 per hour.  According to the OSB 2017 Survey, attorneys in Portland reported hourly rates at the 95th percentile of $525.00 in 2017 for business/corporate litigation, and attorneys in the Portland area at Mr. Suchar's experience level (20 years) reported hourly rates at the 95th percentile of $500.00.

     **v.**     **Jonathan Septer** is a partner at Mason LLP.  He received his B.S. with high honors in 2005 from University of Colorado at Boulder and his J.D. from William Mitchell College of Law in 2009.  He was admitted to the Minnesota State Bar in 2009 and is also a member of the U.S. District Court for the District of Minnesota, the Eastern District of Wisconsin, the Western District of Wisconsin, and the State of Wisconsin.  Prior to joining Maslon, Mr. Septer served as a clerk for the Honorable Robert D. Tiffany of the Hubbard County District Court in Minnesota.  He focuses his practice on real estate acquisitions and dispositions with particular depth in the agribusiness.  Mr. Septer was recognized on Minnesota Rising Stars list as part of the Super Lawyers® selection process.  During the course of this litigation Mr. Septer's rate was $495.00 per hour.  According to the OSB 2017 Survey, attorneys in Portland reported hourly rates at the 75th percentile of $475.00 in 2017 for real estate/land use/environmental law, and attorneys in the Portland area at Mr. Septer's experience level (13-15 years) reported hourly rates at the 95th percentile of $460.00.

     **vi.**     **Evan Nelson** is a senior associate at Mason LLP.  He received his B.A. and M.A. in English from the University of North Dakota, and his J.D. in 2016 from the University of North Dakota School of Law, *summa cum laude*.  He was admitted to the Minnesota State Bar in 2016.  Mr. Nelson

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380    Fax 503.220.2480

1   focuses his practice on complex commercial litigation.  He was named a 2021

2   Up & Coming Attorney by Minnesota Lawyer, was selected for inclusion on

3   the 2021 and 2022 Minnesota Rising Stars lists, and was selected for inclusion

4   in *The Best Lawyers in America*©: Ones to Watch list for 2023.  During the

5   course of this litigation Mr. Nelson's rate was $320.00 per hour.  According to

6   the OSB 2017 Survey, attorneys in Portland reported hourly rates at the 25th

7   percentile of $300.00 in 2017 for business/corporate litigation, and attorneys

8   in the Portland area at Mr. Nelson's experience level (4-6 years) reported

9   hourly rates at the 75th percentile of $300.00.

10          vii.    **Carly Johnson** is an associate at Maslon LLP.  She received

11  her B.A. in Biology from the University of St. Thomas and her J.D. from

12  Mitchell Hamline School of Law, magna cum laude, in 2021.  She was

13  admitted to the Minnesota State Bar in 2021.  Ms. Johnson focuses her

14  practice on complex commercial litigation.  During the course of this

15  litigation, her rate was $280 per hour.  According to the OSB 2017 Survey,

16  attorneys in Portland reported hourly rates at the 25th percentile of $300 in

17  2017 for business/corporate litigation attorney, and attorneys in the Portland

18  area at Ms. Johnson's experience level (1-3 years) reported hourly rates at the

19  75th percentile of $250.

20          viii.    **Michael Collins** is the sole member of Collins Law Firm,

21  LLC.  He received his B.A. from the Centre College of Kentucky in 1975 and

22  his J.D. from Vermont Law School, cum laude, in 1980.  He was admitted to

23  the Oregon State Bar in 1980.  Mr. Collins focuses his practice on estate and

24  trust planning and administration, real estate and agricultural law, and general

25  business law and litigation.  Mr. Collins' rate during the course of this

26  litigation was $300 per hour.  According to the OSB 2017 Survey, attorneys in

Page 10 - PETITION FOR ATTORNEY FEES AND COSTS

116644130.1 0073708-00002

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503.224.3380    Fax 503.220.2480

1    Portland reported hourly rates at the 75th percentile of $310.00 in 2017 for

2    business/corporate litigation, and attorneys in Eastern Oregon area at

3    Mr. Collins experience level (30+ years) reported hourly rates at the 75th

4    percentile of $310.00.

5        e.    The reasonableness of rates for Stoel Rives have been approved by

6    courts in other matters.  *See, e.g., SPF Brewery Blocks, LLC v. Art Institute of*

7    *Portland*, LLC, No 3:18-cv-1749-MO, 2019 WL 1497029, *2 (D Or Apr. 4, 2019)

8    (approving Edwards rate of $525.00 in 2019); *Biotronik, Inc. v. Fry*, No. 3:20-cv-

9    00094-MO, 2020 WL 7048269, *4 (D. Or. Dec. 1, 2020) (approving rate of $540 in

10   2020 for lead Stoel Rives partner with 21 years of experience); *Schnitzer Steel Indus.,*

11   *Inc. v. Cont'l Cas. Corp.*, No. 3:10-CV-01174-MO, 2014 WL 6063976, at *5-6 (D.

12   Or. Nov. 12, 2014) (holding that Stoel Rives' 2014 rates of $560 an hour and $480 an

13   hour for litigation partners were reasonable).  In addition, it is reasonable to allow for

14   an upward adjustment to the average rates presented in the OSB 2017 Survey as a

15   result of inflation over the past five years.  *See Kathrens v. Bernhardt*, 505 F. Supp.

16   3d 1085, 1092-93 (D. Or. 2020) (awarding rates request even though they were

17   "somewhat in excess of the inflation-adjusted 75th percentile rates in the OSB

18   Survey"); *Sponer v. Wells Fargo Bank, N.A.*, No. 3:17-cv-02035, *6 (D. Or. Apr. 28,

19   2020) (using CPI Inflation Calculator to adjust OSB 2017 Survey to 2020).  Using the

20   CPI Inflation Calculator, the OSB 2017 Survey rates would be as follows in 2022:[3]

21

22

| OSB 2017 Survey Rate | 2022 Rate adjusted per CPI Inflation Calculator |
|---|---|
| $525 | $635 |
| $500 | $604 |
| $475 | $575 |

[3] (*See* Edwards Dec. ¶ 6.)

Page 11 - PETITION FOR ATTORNEY FEES AND COSTS
116644130.1 0073708-00002

| | |
|---|---|
| $460 | $556 |
| $405 | $490 |
| $300 | $363 |
| $310 | $375 |
| $250 | $302 |

f.      Based on the above, plaintiff is entitled to an award of reasonable and necessary attorney fees in the sum of $85,719.50 and costs/disbursements in the sum of $705.00.

g.      Defendants are also entitled to a prevailing party fee of $345.00 pursuant to ORS 20.190(2)(a).

I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

DATED:  September 26, 2022          STOEL RIVES LLP


*/s/  Amy Edwards*
AMY EDWARDS, OSB No. 012492
amy.edwards@stoel.com

Attorneys for Defendants

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503.224.3380   Fax 503.220.2480

Page 12 - PETITION FOR ATTORNEY FEES AND COSTS

1      **CERTIFICATE OF SERVICE**

2          I hereby certify that I served a true and correct copy of the foregoing document titled

3   **PETITION FOR ATTORNEY FEES AND COSTS** on the following named person(s) on

4   the date indicated below by

5   ☒  mailing with postage prepaid.     ☒  email (courtesy copy only).

6   ☐  hand delivery.                    ☐  email pursuant to agreement among
                                             parties/counsel dated _____,
7                                            consenting to service via email.

8   ☐  facsimile transmission.           ☐  email, for which a confirmation of receipt of
                                             the email and the attachment by the following
9                                            named person(s) has been received by the
                                             undersigned via the method of _____.
10
    ☐  overnight delivery.               ☒  eService via Odyssey File & Serve.
11

12          If by mail or overnight delivery, a true copy of the above referenced document(s) was
    served upon said person(s) or party(ies), contained in a sealed envelope or package,
13  addressed to said person(s) or party(ies) at their last-known address(es) indicated below.

14  Michael B. Collins, OSB #801951      Russell D. Garrett
    Collins Law Firm, LLC                Christopher K. Dolan
15  PO Box 1457                          Daniel L. Steinberg
    326 SE Second Street                 JORDAN RAMIS
16  Pendleton, OR 97801                  2 Centerpointe Drive, 6th Floor
    mike@pendletonlaw.net                Lake Oswego, OR 97035
17                                       russell.garrett@jordanramis.com
                                         chris.dolan@jordanramis.com
18  Attorney for Defendants Fall Line    daniel.steinberg@jordanramis.com
    Capital, LLC, Canyon Farm, LLC and
    Canyon Farm II, LLC for purpose of
19  issues related to Temporary Restraining   Attorney for Plaintiff Easterday Dairy, LLC
    Order

20

21
            DATED:  September 26, 2022.
22                                       /s/  Amy Edwards
                                         _____
23                                       Amy Edwards, OSB No. 012492
                                         Of Attorneys for Defendants Fall Line Capital,
24                                         LLC, Canyon Farm, LLC and Canyon Farm
                                           II, LLC

25

26

Page   1   -   CERTIFICATE OF SERVICE

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503.224.3380    Fax 503.220.2480

— Verified Correct Copy of Original 2/22/2023 —

Filed February 15 23

**TRIAL COURT ADMINISTRATOR**

By _____ MW

Eva J. Temple
CIRCUIT COURT JUDGE

Phone: 541-667-3031
Fax: 541-667-3176



## IN THE CIRCUIT COURT OF THE STATE OF OREGON
## FOR THE COUNTIES OF MORROW AND UMATILLA
### Sixth Judicial District
PO Box 609, Heppner OR 97836-0609

February 15, 2023

Amy Edwards
Stoel Rives LLP
760 SW Ninth Ave Ste 3000
Portland OR 97205

Christopher K Dolan
Jordan Ramis PC
1211 SW Fifth Ave Fl 27
Portland OR 97204

Re:    Morrow County Case 22CV19843, Easterday Dairy, LLC v Fall line Capital, LLC,
       Canyon Farm LLC and Canyon Farm II, LLC

**OPINION LETTER RE: Defendant Easterday's request for prevailing party fee, attorney**
**fees and costs**

Dear Counsel:

The court heard argument regarding Defendants' Petition for Attorney fees and costs on October 27, 2022. Although this issue was not particularly complex, the court took it under advisement to complete additional legal research based upon Attorney Edwards' Reply to Plaintiff's Objections. Unfortunately, while this case was under advisement, I became ill as did several of my family members, and this caused a delay in preparing and finalizing this opinion. I apologize for any inconvenience caused by the delay.

The history of this case is more complicated than the pleadings alone, the parties and others have filed multiple state and federal court complaints. In this case, Plaintiff filed a complaint on June 16, 2022, and concurrently filed a Motion for Preliminary Injunction. The court signed a Temporary Restraining Order and Order to Show Cause on June 28, 2022.

_Verified Correct Copy of Original 2/22/2023._

Easterday Dairy, LLC v Fall line Capital, LLC, et al
22CV19843
Page **2** of 3

Defendants were officially served on July 1 and July 5, 2022 (Fall Line was served July 5). On July 1, 2022, Defendants filed a Motion to Vacate the TRO and request for expedited hearing. A hearing was held on July 6, 2022, and the court vacated the TRO. On the same day, Plaintiff filed an Amended Complaint. On July 7, 2022, Plaintiff filed a Notice of Dismissal to which defendants responded with a request for attorney fees.

A General Judgment of Dismissal was entered on September 13, 2022, in which Defendants were allowed to seek attorney fees and costs.

Defendants timely filed a Petition for Attorney Fees on September 26, 2022, to which Plaintiff Objected. Defendants filed a Reply and further Declarations in response to Plaintiff's Objections.

Plaintiff primarily objects for the following reasons:

1. All attorney fees billed by the Maslon Firm in Minnesota should be disallowed because the attorneys are not licensed in Oregon and did not apply for pro hac vice status;
2. Certain "block" billing should not be allowed because it does not provide sufficient specificity;
3. Failure to properly authenticate fees from Maslon LLP and Collins Law Firm LLC; and
4. Maslon LLP and Stoel Rives hourly rates were not commensurate with local Morrow County Rates.

For the reasons stated in Defendants' Reply and explained below, the court does not find plaintiff's objections to be persuasive.

First, the argument that Ms. Edwards cannot file and verify true copies of her colleagues' billing statements does not have merit. Nonetheless, Ms. Edwards filed declarations with her Reply in which Mr. Collins and Mr. Septer each verified their firm's billing statements causing the objection to be moot.

Regarding the other claims, Defendant's reply addresses applicable law and provides the basis for this court's ruling. Specific to the billing by the Maslon LLP attorneys, the court finds that in this day and age and in a complex matter such as this it is not unreasonable for law firms to enter into agreements to provide joint representation of clients. Mr. Collins has been local counsel, but the Maslon Firm has been primary counsel for the Defendant companies. When Mr. Collins anticipated he would retire before this litigation ended, he brought in the Stoel Rives Firm. Billing statements show the attorneys conferred together and divided labor regarding research and writing. However, the attorneys from Wisconsin never appeared in court or signed pleadings other than Mr. Septer's declaration verifying his firm's legal fees. Although any of the Wisconsin lawyers likely would have been admitted pro hac vice, the timelines involved in removing the TRO did not allow time for seeking their admission. Nonetheless, the Oregon Supreme court has not prevented billing for paralegals, law clerks and similar non-lawyers and it does not appear to prohibit billing for out of state attorneys when they were hired by defendants to work with their Oregon attorneys.

Easterday Dairy, LLC v Fall line Capital, LLC, et al
22CV19843
Page 3 of 3

_Verified Correct Copy of Original 2/22/2023._

The federal cases cited are persuasive and logical in their treatment of out of state attorneys assisting local counsel on drafting pleadings and providing research. So long as local attorneys (Collins and Stoel Rives) provide final decision making and signature on pleadings, there is no apparent bar to working with outside counsel to prepare litigation. In fact, this is likely to happen within Stoel Rives and many other large national law firms in cases in which its national or multi-national clients receive representation from attorneys in offices located in more than one state. Therefore, the Defendants are not barred from seeking compensation for work performed by Maslon LLP.

About block billing, I have reviewed each billing statement and read every detail. The block billings presented in these statements are not vague or ambiguous. To the contrary, they are detailed, and the total hours billed seem reasonable considering the tasks completed. The fee statements are sufficiently detailed for the court to determine whether they are reasonable to accomplish the defense of the case.

Lastly, the argument that Stoel Rives and Maslon should be limited to the "norm" for Eastern Oregon is not based in reality. With the retirement of Mr. Collins, there are very few firms in Eastern Oregon with the experience to handle litigation of agriculture, land use, environmental regulations and the many other issues involved in this case. As a former litigator in Eastern Oregon, I know my firm often brought in Portland law firms as co-counsel because it is simply not feasible for a one or two attorney firm to manage the discovery and breadth of this type of litigation. Furthermore, Ms Edwards has demonstrated years of experience and skill in litigation. She agreed to take on this case on relatively short notice and had to get up to speed quickly. It is not unusual to request a greater hourly rate in such circumstances and it is not surprising that when taking a case in Eastern Oregon, Portland and other Willamette Valley attorneys understand their costs may be greater due to travel to court and the cite of their client's land dispute. Although Ms Edwards' fees are higher than the "average" Portland attorney, her experience and skill as a long-time litigation partner at Stoel Rives merits the hourly rate she charges.

Therefore, the court will allow the fees and costs as requested by the defendants including the additional fees incurred when defendants had to reply to Plaintiff's objections. The court requests defense counsel prepares a supplemental judgment granting attorney fees and costs.

Sincerely,

Eva J. Temple, Circuit Court Judge

IN THE COURT OF APPEALS OF THE STATE OF OREGON

| | |
|---|---|
| AJAY MOHABEER | |
| Plaintiff-Appellee, | CA No. A172057 |
| v. | TC No. 18CV58678 |
| FARMERS INSURANCE EXCHANGE, a corporation; MID-CENTURY INSURANCE COMPANY, a corporation; TRUCK INSURANCE EXCHANGE; a corporation; COAST NATIONAL INSURANCE COMPANY; a corporation; 21st CENTURY CENTENNIAL INSURANCE COMPANY, a corporation; FARMERS INSURANCE COMPANY OF WASHINGTON, a corporation; FARMERS INSURANCE COMPANY OF OREGON, a corporation; 21st CENTURY PACIFIC INSURANCE COMPANY, a corporation; 21st CENTURY INSURANCE COMPANY, a corporation; COLE, WATHEN, LEID & HALL, P.C., a corporation; and RYAN J. HALL | **FARMERS DEFENDANTS-APPELLANTS' PETITION FOR ATTORNEYS' FEES AND COSTS** |
| Defendants-Appellants. | |

Defendants-Appellants Farmers Insurance Exchange, Mid-Century Insurance

Company, Truck Insurance Exchange, Coast National Insurance Company, 21st

Century Centennial Insurance Company, Farmers Insurance Company of

Washington, Farmers Insurance Company of Oregon, 21st Century Pacific

Insurance Company, and 21st Century Insurance Company (collectively,

"Farmers") move the Court for an order allowing Farmers a reasonable sum as attorney fees in the amount of **$185,276.80**, and awarding costs of **$444.00**.

In an Opinion dated March 16, 2022, this Court reversed the trial court's denial of Farmers' Special Motion to Strike and designated Farmers and the other Appellants as the "Prevailing party."  Farmers is therefore entitled to an award of attorney fees pursuant to ORS 31.152(3), which provides in part as follows: "A defendant who prevails on a special motion to strike made under ORS 31.150 *shall* be awarded reasonable attorney fees and costs."  (Emphasis added.)

This attorney fee provision is mandatory.  "The term 'shall' is a command expressing what is mandatory."  *Bacote v. Johnson*, 333 Or 28, 33, 35 P3d 1019 (2001).  Farmers prevailed *in toto* in this Court because the Court's Opinion remanded for "entry of a judgment dismissing plaintiff's claim."  (Opinion at 1.)

## SUMMARY OF REQUESTED FEES AND COSTS

Farmers requests attorney fees for the time spent by the three attorneys who represented it on appeal and in the trial court.[1]  The number of hours spent by Farmers' attorneys on appeal, a description of the work performed by them, and

---

[1] This Court has discretion to award attorneys' fees and costs incurred in the trial court when, as here, the appellate decision "effectively brings the proceedings to an end."  *Sheppard v. Smith*, 118 Or App 475, 478, 848 P2d 126 (1993) (quoting *Henderson v. Jantzen*, 303 Or 477, 481, 737 P2d 1244 (1987)).  If the Court declines to exercise its discretion to award fees incurred in the trial court, Farmers reserves the right to petition for those fees pursuant to ORCP 68 after entry of judgment below.

the fees incurred are set out in detail in Exhibit 1 to the Declaration of Stephen H.

Galloway ("Galloway Dec."), filed herewith.  Farmers' costs on appeal are detailed

in Exhibit 2 to the Galloway Declaration.  The hours spent by Farmers' attorneys

in the trial court, a description of work performed, and the fees incurred are

detailed in Exhibit 3 to the Galloway Declaration.  Farmers is not seeking recovery

of any costs incurred in the trial court.  The following tables summarize the fees

detailed in Exhibits 1 and 3:

### 1.    Farmers' Attorney Fees on Appeal.

| Name | Position | Hourly Rate | Number of Hours | Fees |
|------|----------|-------------|-----------------|------|
| Timothy W. Snider (2019 rate) | Attorney | $460 | 1.6 | $736 |
| Timothy W. Snider (2020 rate) | Attorney | $520 | 50.1 | $26,016 |
| Timothy W. Snider (2021 rate) | Attorney | $520 | 25 | $13,000 |
| Timothy W. Snider (2022 rate) | Attorney | $585 | 1.1 | $643.50 |
| Stephen Galloway (2019 rate) | Attorney | $340 | 23.1 | $7,854 |
| Stephen Galloway (2020 rate) | Attorney | $370 | 180 | $64,890 |
| Stephen Galloway (2021 rate) | Attorney | $370 | 7.7 | $1,668.80 |
| Stephen Galloway (2022 rate) | Attorney | $435 | 15.1 | $6,568.50 |
| Crystal S. Chase (2019 rate) | Attorney | $385 – then $335 from 9/3/19 | 0.7 – then 0.9 from 9/3/19 | $269.50 |
| Crystal S. Chase (2020 rate) | Attorney | $420 | 4 | $1,654.50 |
| **Total** | | | **309.3** | **$123,300.80** |

## 2.    Farmers' Attorney Fees in the Trial Court.

| Name | Position | Hourly Rate | Number of Hours | Fees |
|---|---|---|---|---|
| Timothy W. Snider (2019 rate) | Attorney | $460 | 33.10 | $15,226 |
| Stephen Galloway (2019 rate) | Attorney | $340 | 137.50 | $46,750 |
| **Total** | | | **170.60** | **$61,976** |

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEY FEES

ORS 20.075(2) provides that "in determining the amount of attorney fees in any case in which an award of attorney fees is authorized or required by statute," "[a] court shall consider" the factors set out in ORS 20.075(1) and ORS 20.075(2).

### 1.    The ORS 20.075(1) Factors.

Of the factors listed in ORS 20.075(1), those set out in subsections (a), (b), (c), and (d) are the most relevant.

####     a.    ORS 20.075(1)(a): The Conduct of the Parties That Gave Rise to the Litigation.

This factor directs the Court to consider the "conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal."  ORS 20.075(1)(a).  As this Court recognized in its Opinion, the United States District Court for the District of Oregon ruled in the underlying proceeding that Farmers presented evidence from which a jury could find that Dr. Mohabeer had engaged in illegal activity:

> "In denying plaintiff's and the other named defendants'
> motions for summary judgment against the claims in the
> underlying action, the federal district court concluded
> that Farmers had demonstrated genuine issues of material
> fact as to whether plaintiff (1) made material
> misrepresentations, either knowingly or recklessly, by
> signing off on falsified chart notes; (2) engaged in a
> pattern of racketeering by committing indictable acts
> through wire and mail fraud; (3) engaged in a conspiracy
> to commit racketeering; and (4) was unjustly enriched by
> fraudulent claims made to Farmers by falsified chart
> notes."

(Opinion at 6.)

Furthermore, as this Court determined in its own review of the record, "there is ample evidence in the record that defendants had probable cause to name plaintiff as a defendant in the underlying action, including affidavits of former clinic employees, who described plaintiff's participation in a scheme to overtreat patients and overbill insurance." (Opinion at 7.) Nevertheless, in the face of this court ruling and "ample evidence" of illegal conduct, Dr. Mohabeer sued Farmers for wrongful use of civil proceedings, claiming Farmers had no probable cause to pursue its claims against him in that underlying lawsuit. This factor supports an award to Farmers in the full amount of its costs and fees.

**b.    ORS 20.075(1)(b): "The objective reasonableness of the claims and defenses asserted by the parties."**

In applying this factor, the Court should consider the "objective reasonableness" of Dr. Mohabeer's claim in the trial court.

6

Dr. Mohabeer asserted a claim for wrongful use of civil proceedings after Farmers settled its claims against him in an earlier federal lawsuit. To prevail on his claim, Dr. Mohabeer had to prove that Farmers lacked probable cause for bringing its claims against him. *Pereira v. Thompson,* 230 Or App 640, 674–675, 217 P3d 236 (2009). Before the settlement, the federal district court issued detailed findings and recommendations, which were adopted by the district judge, stating that Farmers had evidence from which a jury could find that Dr. Mohabeer was liable for fraud, racketeering, and unjust enrichment. *Farmers Ins. Exch. v. First Choice Chiro. & Rehab.*, No. 3:13-cv-01883-PK, 2016 WL 10827072 at *13, 23, 29 (D. Or. 2016).

This Court was also able to determine, upon review of a portion of the federal court record, that Farmers had probable cause to assert its claims. Dr. Mohabeer's claims to the contrary in the face of this evidence was objectively unreasonable and warrants Farmers' recovery of its costs and fees in full.

     **c.**    **ORS 20.075(1)(c) and (d): Deterrent Effect of Attorney Fee Award.**

ORS 20.075(1)(c) and (d) address the deterrent effects that an award of fees would have on others in asserting good faith or meritless claims and defenses. An award of the full amount of attorney fees requested by Farmers would have no impact on the assertion of good faith claims for wrongful use of civil proceedings because, as discussed above, an objective analysis of Dr. Mohabeer's claim would

have revealed from the start that it was meritless.  To the contrary, an award of Farmers' fees and costs in full would deter litigants from bringing retaliatory, post-settlement claims with no merit like the one asserted by Dr. Mohabeer here.

**2.    The ORS 20.075(2) Factors.**

Of the factors listed in ORS 20.075(2), those set out in subsections (a), (c), (d), (f), (g) and (h) are relevant here.

**a.    ORS 20.075(2)(a):  Time and Labor, Novelty and Difficulty, and Skill Needed.**

This provision directs the Court to consider "[t]he time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services."  ORS 20.075(2)(a).  All of these factors support an award of the full amount of Farmers' costs and fees.

The time and tasks detailed in Exhibits 1 and 3 to this Petition were necessary to Farmers' successful resolution of this dispute.  The case presented a question of first impression in Oregon: whether a court's prior denial of summary judgment because evidence in record created questions of fact establishes probable cause sufficient to defeat a subsequent claim for wrongful use of civil proceeding.  Although this Court declined to adopt a bright-line rule, Farmers was nonetheless required to develop and present a complex legal argument that involved an analysis of the merits of Dr. Mohabeer's wrongful use claim and application of the Oregon

anti-SLAPP statute.  Furthermore, this case required a detailed understanding and analysis of the prior federal proceeding, which had been extensively litigated for over three years, generating more than 350 docket entries.  *Farmers Ins. Exch. v. First Choice Chiro. & Rehab.*, No. 3:13-cv-01883-PK (D. Or. Oct. 22, 2013).

Dr. Mohabeer's aggressive litigation tactics also increased the amount of legal work necessary to successfully resolve the case.  At the trial court, Farmers filed a 20-page Special Motion to Strike, and Dr. Mohabeer responded with a *79-page* "Omnibus Response," a 36-page "Addendum" of additional briefing, and at least five supporting declarations including *495 pages* of materials and evidence from the federal litigation.  This approach continued on appeal, where Dr. Mohabeer's Answering Brief asserted approximately 24 separate legal arguments, necessitating an overlength Reply in order to address them all.

In light of the lengthy record of the federal case, the extensive argument propounded by Dr. Mohabeer's counsel, and the novelty of the legal issues, the time spent by Farmers' attorneys on this matter is more than reasonable.

### b.    ORS 20.075(2)(c):  Fees Customarily Charged in the Locality for Similar Services.

Farmers seeks an award of fees for 479.9 hours of work over the course of the multi-year trial court and appellate proceedings.  In the trial court, Farmers' attorneys billed at their 2019 rates of $460 and $340, respectively, for Mr. Snider and Mr. Galloway.  In this Court, Farmers was billed at counsel's 2020 rates of

$520 and $370.  Those rates are all within the range of rates customarily charged in Portland for similar services by attorneys of comparable experience.[2]

The 2020 Morones Survey of Commercial Litigation Fees (the "Morones Survey") is attached to the Galloway Declaration as Exhibit 5.  The Morones Survey is particularly applicable because it is specific to Portland-area commercial litigators, representing the fees charged by 318 commercial litigators from 21 firms in the Portland area.  (Galloway Dec., Ex. 5 at 3.)  For attorneys with 10-19 years of experience, which includes Mr. Snider and Mr. Galloway for all relevant years, the average rate in 2018 was $411, and the median rate was $400.  (*Id.* at 2.)  For 2020, the average rate was $451, and the median rate was $440.  (*Id.*)  For both years, Mr. Snider's rate was slightly above the average, but Mr. Galloway, who performed the majority of the work, had a rate well below the average and median rates.

Another less recent survey of billing rates is the Oregon State Bar 2017 Economic Survey (the "Bar Survey").  (Galloway Dec., Ex. 6.)[3]  The rates reflected in the Bar Survey are consistent with those in the Morones Survey.  The

---

[2] Mr. Snider's and Mr. Galloway's market rates are higher than the discounted rates billed to Farmers, and this Court could award market rates in excess of rates actually billed.  *See Friends of the Columbia Gorge v. Energy Facility Siting Council*, 367 Or 258, 272-73, 477 P3d 1191 (2020).  Farmers nonetheless seeks only the amounts actually paid in defense of this matter.
[3] The Survey is also available online at https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf (visited March 29, 2022).

Bar Survey shows that the mean rate for business litigation in Portland in 2016 was $367, and the median rate was $365. (*Id.* at 40.) The Morones Survey similarly shows that the average rate for commercial litigation in Portland in 2016 for attorneys with 10-19 years of experience was $371 and the median rate was $355. (Galloway Dec., Ex. 5 at 2.)

Both surveys demonstrate that Farmers employed (1) an attorney to perform the majority of the work, Mr. Galloway, whose rate was below average for commercial litigators in Portland, and (2) an attorney in a supervisory role, Mr. Snider, whose rate was slightly above average.

Oregon state and federal courts regularly find rates of Stoel Rives attorneys and others of similar skill and experience to be reasonable. In *SPF Brewery Blocks, LLC v. Art Institute of Portland, LLC*, the District of Oregon found Stoel Rives partner Amy Edwards' 2018 rate of $525 to be reasonable based on her skill and 17 years of experience. No. 3:18-cv-1749-MO, 2019 WL 1497029, at *2 (Apr. 4, 2019). The court also approved a 2018 rate of $390 for Stoel Rives attorney Reed Morgan, who had 11 years of experience. *Id.* Both of these rates exceed the rates sought here by Mr. Snider and Mr. Galloway, who have comparable experience. *See also Bernards v. Summit Real Estate Mgmt., Inc.,* 229 Or App 357, 213 P3d 1 (2009) (Sept. 24, 2009 order granting fees to Stoel Rives partner Joel Mullin at $495 per hour); *Schnitzer Steel Indus., Inc. v. Cont'l Cas.*

*Corp.*, No. 3:10-CV-01174-MO, 2014 WL 6063976, at *6 (D. Or. Nov. 12, 2014) (finding Stoel Rives' partner rates of $480 and $560 reasonable).

      c.      **ORS 20.075(2)(d):  Amount Involved and Results Obtained.**

Dr. Mohabeer's Complaint sought $10 million in economic damages and $50 million in noneconomic damages, and it further reserved a right to seek punitive damages.  As a result of the defense provided by Farmers' counsel, he did not recover any of his prayer, and the fees spent in defense of this case are modest in light of the claimed damages exposure.

      d.      **ORS 20.075(2)(f):  The Nature and Length of the Attorney's Professional Relationship with the Client.**

Mr. Snider has represented Farmers for approximately 18 years in litigation matters in Oregon and around the country, and Mr. Galloway has represented Farmers for approximately 8 years.

      e.      **ORS 20.075(2)(g):  The Experience, Reputation, and Ability of the Lawyer Performing the Services.**

Mr. Snider received his B.A., *magna cum laude*, from Wheaton College in 1999, and his J.D., *summa cum laude*, from Willamette University College of Law in 2003.  He was admitted to practice in Oregon in 2003 and is admitted to practice before the U.S. Supreme Court, the U.S. Court of Appeals for the Ninth and Tenth Circuits, and the U.S. District Court for the Districts of Oregon and Western Washington.  Mr. Snider joined Stoel Rives in 2003 and is a partner of the firm.

Mr. Snider served as the firm-wide, multi-office litigation practice group leader from 2015 to 2020. He focuses his practice on complex business litigation and has been selected as one of "America's Leading Lawyers for Business" (Oregon) by *Chambers USA®* (Litigation: General Commercial) from 2016 to 2021. (*See generally* Galloway Dec., Ex. 4.)

Mr. Galloway received his B.A. from the University of North Carolina-Chapel Hill in 1998, and his J.D., *magna cum laude*, from Tulane University Law School in 2009. He was admitted to practice in Oregon in 2009 and is admitted to practice before the U.S. Court of Appeals for the Ninth Circuit, and the U.S. District Court for the District of Oregon. Mr. Galloway joined Stoel Rives in 2008 and is of counsel at the firm. He focuses his practice on complex business litigation and was selected as a "Rising Star" (Business Litigation) by *Oregon SuperLawyers* from 2012-2019. (*See generally id.*)

### f.    ORS 20.075(2)(h):  Whether the attorney's fee was fixed or contingent

Farmers' attorneys billed their time on an hourly basis.

### CONCLUSION

Based on the foregoing factors, Farmers requests an award of reasonable fees for its attorneys' work on appeal and in the trial court in the sum of **$185,276.80**, as set forth in Exhibits 1 and 3 to the Galloway Declaration.

Farmers further requests an award of costs incurred on appeal in the sum of

**$444.00**, as set forth in Exhibit 2 to the Galloway Declaration.

DATED:  April 6, 2022.

STOEL RIVES LLP


*/s/ Stephen H. Galloway*
TIMOTHY W. SNIDER, OSB No.
034577
STEPHEN H. GALLOWAY, OSB No.
093602

Attorneys for Farmers Defendants-
  Appellants

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

## AND FONT SIZE REQUIREMENTS

I certify that the foregoing brief complies with ORAP 5.05.  It contains

2,868 words, in 14-point Times New Roman font, text and footnotes.


*/s/ Stephen H. Galloway*
TIMOTHY W. SNIDER, OSB No. 034577
STEPHEN H. GALLOWAY, OSB No. 093602

Attorneys for Farmer Defendants-Appellant

# CERTIFICATE OF FILING

I certify that on April 6, 2022, I filed the foregoing document titled

**FARMERS DEFENDANTS-APPELLANTS' PETITION FOR**

**ATTORNEYS' FEES AND COSTS** by using the appellate Electronic Filing

System with:

>Daniel W. Parr
>Appellate Court Administrator

I certify that on April 6, 2022, a true copy of this **FARMERS**

**DEFENDANTS-APPELLANTS' PETITION FOR ATTORNEYS' FEES**

**AND COSTS** will be served by using the Oregon Appellate Court Electronic Filing

System, and by email.

George Pitcher
David C. Campbell
Lewis Brisbois Bisgaard & Smith LLP
888 SW Fifth Ave., Suite 900
Portland, OR  97204-2025
Telephone:  (971) 712-2803
Email: david.campbell@lewisbrisbois.com
Email:  george.pitcher@lewisbrisbois.com

J. William Savage
J. William Savage, P.C.
620 SW Fifth Ave., Suite 1125
Portland, OR  97205
Phone:  (503) 222-0200
Email:  jwsavage@earthlink.net

William T. Webb
Webb Legal Group
580 California Street, Suite 1200
San Francisco, CA  94104
Telephone: (415) 277-7200
Email:  wwebb@webbgalgroup.com

DATED:  October 18, 2024.                    STOEL RIVES LLP

_/s/ Stephen H. Galloway_
TIMOTHY W. SNIDER, OSB No. 034577
STEPHEN H. GALLOWAY, OSB No. 093602

*Attorneys for Defendants-Appellant*

IN THE COURT OF APPEALS OF THE STATE OF OREGON

AJAY MOHABEER,
Plaintiff-Respondent,

v.

FARMERS INSURANCE EXCHANGE, a corporation; MID-CENTURY
INSURANCE COMPANY, a corporation; TRUCK INSURANCE EXCHANGE, a
corporation; COAST NATIONAL INSURANCE COMPANY, a corporation; 21ST
CENTURY CENTENNIAL INSURANCE COMPANY, a corporation; FARMERS
INSURANCE COMPANY OF WASHINGTON, a corporation; FARMERS INSURANCE
COMPANY OF OREGON, a corporation; 21ST CENTURY PACIFIC INSURANCE
COMPANY, a corporation; 21ST CENTURY INSURANCE COMPANY, a corporation;
COLE, WATHEN, LEID & HALL, P.C., a corporation; and RYAN J. HALL,
Defendants-Appellants.

Multnomah County Circuit Court No. 18CV58678

Court of Appeals No. A172057

**ORDER ALLOWING ATTORNEY FEES AND COSTS**

Before Egan, Presiding Judge, and Kamins, Judge.

In this appeal from the trial court's limited judgment denying defendants' special
motion to strike plaintiff's claims, defendants prevailed. Thus, defendants petition for
awards of attorney fees and costs, pursuant to ORS 31.152(3). Plaintiff opposes the
petitions and requests findings. *See* ORAP 13.10(7).

As a preliminary matter, Farmers Insurance Exchange, Mid-Century Insurance
Company, Truck Insurance Exchange, Coast National Insurance Company, 21st
Century Centennial Insurance Company, Farmers Insurance Company of Washington,
21st Century Pacific Insurance Company, and 21st Century Insurance Company
(collectively, "Farmers"), and defendants Cole, Wathen, Leid & Hall, P.C. and Ryan J.
Hall (the "attorney defendants"), all petition for attorney fees (and associated costs) for
work performed before both the trial court and this court. We decline to award fees for
work performed at the trial court level. Therefore, we address only Farmers' request for
appellate court attorney fees in the amount of $123,300.80 and costs totaling $444, and
the attorney defendants' request for appellate court attorney fees in the amount of
$135,049 and costs totaling $696.

ORS 31.152(3) provides, in pertinent part, that "[a] defendant who prevails on a
special motion to strike made under ORS 31.150 shall be awarded reasonable attorney
fees and costs." *See also* ORS 19.440(1) ("If a statute of this state authorizes or
requires an award of attorney fees to a party to a proceeding, but does not expressly
authorize or require that award on appeal * * * and does not expressly prohibit that
award on appeal, * * * the statute shall be construed as authorizing or requiring the

ORDER ALLOWING ATTORNEY FEES AND COSTS

award of attorney fees on appeal * * *."). Thus, awards of reasonable appellate attorney fees to defendants in this case are mandatory.[1]

In determining the amounts of reasonable attorney fees to award, we consider the factors under ORS 20.075(1) and (2). *See* ORS 20.075(2) (in addition to the factors specified in subsection (2) of this statute, "[a] court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which an award of attorney fees is authorized or required by statute"). Having considered those factors, as well as the parties' arguments, we are persuaded that the fees requested are largely reasonable. In particular, we find that ORS 20.075(1)(a), (1)(b), (1)(d), (2)(a), (2)(c), (2)(d), (2)(f), and (2)(g), support the fee requests. However, we further find that the amounts requested by each set of defendants are slightly excessive. Therefore, we award reasonable attorney fees to Farmers in the amount of $121,376.80, and to the attorney defendants in the amount of $120,049.

As for costs, they are unopposed. However, we may award only those costs that we have authority to award, and we understand our authority to extend only so far as those costs specified in ORS 20.310(2). *Cf.* ORAP 13.05(6)(e) (court may award requested costs only if it has "authority" to do so). The attorney defendants request $391 for the first appearance filing fee, $255 for the transcript, and $50 for half of the prevailing party fee to which all defendants are entitled. *See* ORS 20.310; ORS 20.190. Those fees are recoverable, and we therefore award the attorney defendants costs in the amount of $696. Farmers requests $391 for the first appearance filing fee and $53 for a MOET filing fee. Although the first appearance filing fee is recoverable, the MOET filing fee is not; therefore, we award costs to Farmers in the amount of $441 for the first appearance filing fee and the other half of the $100 prevailing party fee.

In sum, we award Farmers reasonable attorney fees in the amount of $121,376.80 and costs in the amount of $441, and we award the attorney defendants reasonable attorney fees in the amount of $120,049 and costs in the amount of $696.

JAMES C. EGAN
PRESIDING JUDGE, COURT OF APPEALS
9/13/2022   9:11 AM

c:  George Steven Pitcher
    J William Savage
    Stephen H Galloway
    Rachel A Robinson
    Timothy W Snider
    William T. Webb

                                                                    ej

---

[1]    We reject without discussion plaintiff's argument that defendants were required to request appellate court attorney fees from the trial court.

**ORDER ALLOWING ATTORNEY FEES AND COSTS**

2019 WL 1497029
Only the Westlaw citation is currently available.
United States District Court, D. Oregon,
Portland Division.

SPF BREWERY BLOCKS, LLC, Plaintiff,

v.

ART INSTITUTE OF PORTLAND, LLC, Defendant.

No. 3:18-cv-1749-MO
|
Signed 04/04/2019

**Attorneys and Law Firms**

Amy Edwards, Reed W. Morgan, Stoel Rives LLP, Portland, OR, for Plaintiff.

Anthony A. Todaro, Anthony A. Todaro, DLA Piper LLP, Seattle, WA, for Defendant.


OPINION AND ORDER

MICHAEL W. MOSMAN, Chief United States District Judge

**\*1** This matter comes before me on Plaintiff's Motion for Attorney Fees and Expenses [21] and Bill of Costs [23]. Plaintiff seeks $44,167.00 in attorney fees, $393.09 in expenses, and $303.00 in costs. Defendant did not file a response to Plaintiff's motion.


**BACKGROUND**

Plaintiff SPF Brewery Blocks (SPF) brought this action against Defendant Art Institute of Portland (AI) in Multnomah County Circuit Court. Todaro Decl. [1] Attach. 1 at 5. SPF alleged that AI, its tenant, had defaulted on its lease for the property located at 1122 NW Davis Street in Portland, Oregon. *Id.* The lease was guaranteed by AI's former parent company, Education Management Company (EMC), which declared bankruptcy in June 2018. *Id.* at 6. EMC's bankruptcy was an "event of default" under the terms of the lease. *Id.* SPF brought this state law forcible entry and detainer (FED) action in an attempt to quickly recover its property. Mot. to Remand [4] at 2; *see* Or. Rev. Stat. § 105.135(2) (requiring appearance in an FED action seven days after the payment of filing fees). An FED judgment results in restitution of the property, an award of costs, and attorney fees; monetary damages are not permitted in an FED action. *See* Or. Rev. Stat. § 105.145. AI timely removed to this Court on the basis of diversity jurisdiction. Notice of Removal [1] at 1. SPF sought remand of the case to state court, arguing that an FED action cannot be removed on the basis of diversity jurisdiction because there is no amount in controversy—the only remedy available is restitution of the property. Mot. to Remand [4] at 6. In the alternative, SPF argued that remand was appropriate on abstention principles. *Id.* at 9–10.

Although SPF cited cases from this District in which diversity jurisdiction was denied because an FED action did not admit of an amount in controversy, I found those cases distinguishable and I denied SPF's motion to remand. Order [14]. Shortly thereafter, the parties filed a stipulation stating that AI was in default of its lease due to EMC's bankruptcy and judgment was entered in favor of SPF. Stipulated J. [20] at 1–2.

Shaddy-Farnsworth Decl
Ex E Page 49 of 62

## DISCUSSION

### I. Entitlement

SPF does not argue that it is entitled to attorney fees as a prevailing party. Instead, SPF brings a contractual claim that it is entitled to reasonable attorney fees. Mot. [21] at 6. The lease agreement between SPF and AI stated that, in the event of default, SPF was entitled to "all damages caused by the default, including reasonable attorney fees.... [and] all legal expenses and other related costs incurred by Landlord following Tenant's default." Notice [9] Ex. A at 46. AI also stipulated to SPF's entitlement to "reasonable attorneys' fees, costs, and expenses incurred herein." Stipulated J. [20] at 2.

### II. Amount

#### A. Attorney Fees

**\*2**  Oregon law governs the award of attorney fees. *Northon v. Rule*, 637 F.3d 937, 938 (9th Cir. 2011) ("State laws awarding attorneys' fees are generally considered to be substantive laws under the Erie doctrine ...."). Oregon courts generally award attorney fees based on the lodestar method, in which courts multiply the reasonable number of hours spent on the case by a reasonable hourly rate. *See Strawn v. Farmers Ins. Co. of Or.*, 297 P.3d 439, 447–48 (Or. 2013). The lodestar may be adjusted based on the factors specified in Or. Rev. Stat. § 20.075. *Alexander Mfg., Inc. Emp. Stock Ownership & Tr. v. Ill. Union Ins. Co.*, 688 F. Supp. 2d 1170, 1181 (D. Or. 2010). My analysis will therefore focus on whether SPF's requested hourly rates and hours spent on this litigation are reasonable. SPF requests the following hours and rates:

| Person | Hours | Hourly Rate | Amount |
| --- | --- | --- | --- |
| Amy Edwards | 29.5 | $490-525.00 | $14,966.00 |
| Andrew Solomon | 8.7 | $485-500.00 | $4,228.50 |
| Reed Morgan | 58.7 | $380-390.00 | $22,469.00 |
| Tyler Killeen | 1.7 | $325.00 | $552.50 |
| Julie Brown | 6.1 | $270.00 | $1,647.00 |
| Curt Tiegen | 3.8 | $80.00 | $304.00 |
|  | | **TOTAL** | $44,167.00 |

As an initial matter, I find that SPF has timely produced an adequate documentation of its billing records. SPF submitted an accounting of its attorney fees attached to the sworn declaration of Amy Edwards, which suffices as a signed and detailed statement of the amount of attorney fees. *See* Or. R. Civ. P. 68 C(4).

#### 1. Hourly rates

"As a benchmark for comparing an attorney's billing rate with the fee customarily charged in the locality, this Court uses the most recent Oregon State Bar (OSB) Economic Survey." *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1244 (D. Or. 2013); *see* Oregon State Bar 2017 Economic Survey (available at https://www.osbar.org/_docs/ resources/ Econsurveys/17EconomicSurvey.pdf) [hereinafter "OSB Survey"]. "If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate. Even when such justification is present, the

court usually limits the hourly rate to the 75th percentile of the OSB Survey." *Prison Legal News v. Umatilla Cty.*, No. 2:12-cv-01101-SU, 2013 WL 2156471, at *4 (D. Or. May 16, 2013) (citation omitted).

### a. Amy Edwards

Ms. Edwards is a commercial litigator and a partner at Stoel Rives with eighteen years of experience. Edwards Decl. [22] at 3. SPF seeks $490 per hour for work Ms. Edwards performed through November 30, 2018, and $525 per hour for her work after that date. Edwards Decl. [22] at 2. According to the OSB Survey, attorneys in Portland with 16–20 years of experience billed an hourly rate of $400 at the 75th percentile and $500 at the 95th percentile. OSB Survey at 39. SPF argues that I should award an rate in excess of the 75th percentile because Ms. Edwards is experienced in complex commercial litigation and real estate disputes. Mot. [21] at 8. SPF also argues that I should use the OSB Survey's rates for attorneys practicing business and corporate litigation, which are higher than the rates based only on experience. *Id.* The rates for business and corporate attorneys practicing in Portland are $425 at the 75th percentile and $525 at the 95th percentile. OSB Survey at 40.

I find that the rates applicable to attorneys practicing business and civil litigation is the appropriate comparator and that Ms. Edwards's requested rates—at or below the 95th percentile—are reasonable in the light of her experience and the nature of this litigation.

### b. Andrew Solomon

Mr. Solomon is a real estate attorney and a partner at Stoel Rives with sixteen years of experience. Edwards Decl. [22] at 4. SPF seeks $485 per hour for work performed by Mr. Solomon through November 30, 2018, and $500 per hour for his work after that date. Edwards Decl. [22] at 2. As it did for Ms. Edwards, SPF argues that the rates for Mr. Solomon's area of practice should be used to determine a reasonable rate rather than the rates based on years of experience for attorneys of all stripes. The OSB Survey reported that rates for real estate attorneys in Portland ranged from $475 at the 75th percentile to $610 at the 95th percentile. OSB Survey at 42. I find that the rates based on area of practice are appropriate for evaluating the reasonableness of Mr. Solomon's rates. Although Mr. Solomon's requested rates are slightly higher than the 75th percentile for real estate attorneys, I find that the differences represent reasonable annual increases from the rates provided in the OSB Survey, which was conducted in 2017.

### c. Reed Morgan

**\*3** Mr. Morgan is a commercial litigator and an associate at Stoel Rives with eleven years of experience. Edwards Decl. [22] at 4. SPF seeks $380 per hour for the work Mr. Morgan performed through November 30, 2018, and $390 per hour for his work after that date. Edwards Decl. [22] at 2. According to the OSB Survey, attorneys in Portland with 10–12 years of experience billed an hourly rate of $340 at the 75th percentile and $410 at the 95th percentile. OSB Survey at 39. As it did for Ms. Edwards, SPF argues that the rates for Mr. Morgan's area of practice should be used to determine a reasonable rate. I agree and I find that Mr. Morgan's rate is reasonable because it is less than the 75th percentile for corporate litigators in Portland. *See* OSB Survey at 40.

### d. Tyler Killeen

Mr. Killeen is an associate at Stoel Rives with less than three years of experience. *See* Edwards Decl. [22] at 5. SPF seeks $325 per hour for Mr. Killeen's work on this case. According to the OSB Survey, attorneys in Portland with 3 years of experience or less billed an hourly rate of $250 at the 75th percentile. OSB Survey at 38. SPF provided no reason to find that a higher rate is appropriate for Mr. Killeen's work. Therefore, I find that a reasonable rate for Mr. Killeen's work is $250 per hour.

### e. Julie Brown

Ms. Brown is a paralegal with twenty-two years of experience at Stoel Rives. Edwards Decl. [22] at 5. SPF requests $270 per hour for the work she performed.

"Although the OSB Economic Surveys contain no information regarding paralegal billing rates, Judges in this District have noted that a reasonable hourly rate for a paralegal should not exceed that of a first year associate." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1248. The average hourly rate for a Portland attorney with three years of experience or less is $236 per hour. OSB Survey at 38. I conclude that $236 per hour is a reasonable rate for a paralegal with Ms. Brown's experience.

### f. Curt Tiegen

SPF describes Mr. Tiegen as a member of Stoel Rives's "Project Staff" and has submitted an accounting of the time he spent serving the summons and complaint in this case. *See* Edwards Decl. [22] Ex. 1 at 2. Because service of a summons and complaint is a cost of litigation rather than a component of an attorney fee, I address the amount requested by SPF for Mr. Tiegen's work in the section below that addresses SPF's request for costs.

### 2. Hours spent

The first question raised by SPF's request for attorney fees is whether it may claim time spent in unsuccessfully pursuing remand of this case. I agree with SPF that the motion to remand was an expense "caused by the default" and incurred in the litigation, as contemplated by the terms of the lease agreement and the stipulation between the parties. An FED action is normally a state procedure and SPF's motion to remand was a foreseeable consequence of AI's decision to remove the action to this Court. It was especially foreseeable given the prior decisions in this District regarding whether an FED action could be removed on the basis of diversity jurisdiction. Therefore, SPF's request for fees related to its motion to remand is appropriate. I also find that the total number of hours claimed and the allocation of work based on experience are reasonable for the complexity of this case.

### 3. Research Fees

SPF states that it seeks $393.09 for expenses. Mot. [21] at 4. Elsewhere, it also states that it seeks $143.89 for "expenses generated for service of summons and electronic research." *Id.* at 9. However, documentation submitted to substantiate these expenses shows $342.02 in electronic research costs and $51.07 in mileage expenses to serve the summons and complaint. As discussed above, expenses for the service of summons should be treated as costs rather than as a component of attorney fees. However, the Ninth Circuit has found that electronic research fees are recoverable as a component of attorney fees. *Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins.* Co., 460 F.3d 1253, 1259 (9th Cir. 2006). I find that SPF has shown that it incurred $342.02 in electronic research costs, which is a reasonable amount considering the demands of this case.

## III. Costs

**\*4** The parties' lease agreement allows SPF to recover costs "caused by the default." Notice [9] Ex. A at 46. And the parties stipulated to the recovery of "reasonable attorneys' fees, costs, and expenses incurred herein." Stipulated J. [20] at 2. Unlike attorney fees, the award of costs is governed by federal law. 28 U.S.C. § 1920; *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003). In its Bill of Costs, SPF sought $303 for fees of the clerk and fees for printing. These costs are at recoverable under § 1920 and I find the costs reasonable.

In addition, in its motion for attorney fees and expenses, SPF sought reimbursement for fees associated with service of the summons and complaint in this case. SPF requested $304.00 for Curt Tiegen's time and $51.07 for mileage expenses in serving the summons and complaint in this case. Edwards Decl. [22] at 2–3. Finding that these expenses are properly categorized as costs, I must also determine whether they are permissible under 28 U.S.C. § 1920.

Section § 1920 permits "[f]ees of the clerk and marshal," which has been interpreted to include the costs of a private process server. *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 178 (9th Cir. 1990). Therefore, I find that SPF's request for costs associated with service are allowed. I also find $355.07 a reasonable cost for service of the summons and complaint.

## CONCLUSION

In summary, I reduce SPF's request by $334.90 to account for the reduced rates of Mr. Killeen and Ms. Brown. I award SPF $43,528.10 in attorney fees, $342.02 in expenses, and $658.07 in costs.

IT IS SO ORDERED

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1497029

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 6063976
Only the Westlaw citation is currently available.
United States District Court, D. Oregon.

SCHNITZER STEEL INDUSTRIES, INC., an Oregon corporation;
and MMGL Corp., a Washington corporation, Plaintiffs,

v.

CONTINENTAL CASUALTY CORPORATION, an Illinois corporation;
and Transportation Insurance Company, an Illinois corporation, Defendants.

No. 3:10–cv–01174–MO.
|
Signed Nov. 12, 2014.

**Attorneys and Law Firms**

Allison Buckner Parker, Rebekah Byers Kcehowski, John E. Iole, Joseph W. Montgomery, III, Jones Day, Pittsburgh, PA, Scott J. Kaplan, Crystal S. Chase, Louis A. Ferreira, IV, Stoel Rives LLP, Portland, OR, for Plaintiffs.

Brett Sommermeyer, Daniel L. Syhre, Lawrence Gottlieb, Betts Patterson Mines, Seattle, WA, for Defendants.

OPINION AND ORDER

MOSMAN, District Judge.

**\*1** Schnitzer Steel Industries, Inc. ("Schnitzer") was the prevailing party in the above captioned case. Under Oregon law, as the prevailing party, Schnitzer is entitled to its reasonable attorney fees. ORS § 742.061. Schnitzer's counsel seeks $3,483,878 in attorney fees for litigating the case on the merits, and $49,681 for fees incurred in their preparation of their fee petition.

BACKGROUND

On September 28, 2010, Schnitzer filed its complaint seeking damages for breach of contract in excess of $3,000,000 plus interest, and declaratory relief to resolve disputes regarding the parties' relationship going forward. (Complaint [1].) The claims arose out of Schnitzer's Portland Harbor insurance claim that had been pending with Continental Casualty Corporation ("Continental") for an extended period of time. (Memo. in Support of Costs [448] at 1.) Schnitzer alleged that Continental refused to pay, underpaid, or paid only after a substantial delay Schnitzer's defense costs in the Portland Harbor matter. (*Id.*) Schnitzer retained two law firms to prosecute its claim: Jones Day and Stoel Rives.

After extensive discovery, numerous motions for summary judgment, and failed attempts at mediation and settlement, the parties ultimately tried the case in April 2014. The jury returned a verdict in favor of Schnitzer on every claim presented. The jury awarded Schnitzer the full amount of requested damages—$8,601,700. (Verdict [394].)

Continental filed post-trial motions regarding attorney fees, equitable estoppel, and laches. I denied each of Continental's motions, and entered judgment in favor of Schnitzer. (Order [419].) I confirmed the jury's damages award, awarded prejudgment interest of $2,463,867, and held that Schnitzer was entitled to recover its reasonable attorney fees and costs. *Id.*

Shaddy-Farnsworth Decl
Ex E Page 54 of 62

## LEGAL STANDARDS

In diversity cases, attorney fee awards are governed by state law. *Schumacher v. City of Portland,* 2008 WL 219603, at *2 (D.Or. Jan.23, 2008). In this case, ORS § 742.061(1) provides the relevant rules regarding whether or not an award of attorney fees is appropriate. That statute states, in relevant part:

> if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

ORS § 742.061(1). This statute is intended to "encourage the settlement" of insurance claims and to "reimburse successful plaintiffs reasonably for moneys expended for attorneys fees in suits to enforce insurance contracts." *Chalmers v. Or. Auto. Ins. Co.,* 263 Or. 449, 452, 502 P.2d 1378 (1972). When the conditions enumerated in ORS § 742.061(1) are met, attorney fees must be awarded. *See Petersen v. Farmers Ins. Co. of Oregon,* 162 Or.App. 462, 466, 986 P.2d 659 (1999).

 **\*2** Subsections (1) and (2) of ORS § 20.075 list the factors the Court must consider in determining the amount of an award of attorney fees. The factors listed in subsection (1) are:

(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

(b) The objective reasonableness of the claims and defenses asserted by the parties.

(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

ORS § 20.075(1). The factors listed in subsection (2) are:

(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved in the controversy and the results obtained.

(e) The time limitations imposed by the client or the circumstances of the case.

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

ORS § 20.075(2).

When analyzing the factors under ORS § 20.075, the Court should "includ[e] in its order a brief description or citation to the factor or factors on which it relies." *McCarthy v. Or. Freeze Dry, Inc.,* 327 Or. 185, 188, 957 P.2d 1200 (1998). But the Court "ordinarily has no obligation to make findings on statutory criteria that play no role in the court's decision." *Frakes v. Nay,* 254 Or.App. 236, 255, 295 P.3d 94 (2012).


## DISCUSSION

**I.** *Application of ORS § 742.061*

Continental begins its opposition to Schnitzer's fee petition with a very interesting argument regarding the applicability of ORS § 742.061 to this case. Schnitzer tries to brush away Continental's argument as a frivolous attempt to avoid paying a fee award that Schnitzer argues is clearly mandated by statute. I disagree with Schnitzer that this is a clear cut decision, but ultimately agree with Schnitzer that ORS § 742.061 does apply to this case.

**\*3** Continental argues that the plain language of ORS § 742.061 does not apply to this case. (Defs.' Opposition [464] at 7.) The statute clearly states that it applies when "an action is brought in any court of this state upon any policy of insurance ..." (ORS § 742.061.) Continental argues that because Schnitzer did not bring its claim in a court *of* Oregon, but rather a court *in* Oregon, this statute does not apply. Continental's best piece of evidence to support its position is a recent Ninth Circuit opinion interpreting the phrase "the courts of" in the context of a forum selection clause. In that case, the Ninth Circuit held:

> We conclude[ ] that the choice of the preposition "of" in the phrase "the courts of Virginia" was determinative—"of" is a term "denoting that from which anything proceeds; indicating origin, source, descent, and the like." Thus, the phrase "the courts of" a state refers to courts that derive their power from the state-*i.e.* only state court—and the forum selection clause, which vested exclusive jurisdiction in the courts "of" Virginia, limited jurisdiction to the Virginia state courts.

> In short ... a forum selection clause that specifies "courts of" a state limits jurisdiction to state courts, but specification of "courts in" a state includes both state and federal courts.

*Simonoff v. Expedia, Inc.,* 643 F.3d 1202, 1205–06 (9th Cir.2011) (internal citations omitted). Continental would have this court interpret the statutory language of ORS § 742.061 the same way that the *Expedia* court interprets the term "of" when found in forum selection clauses.

Schnitzer scoffs at this argument and lists the following unconvincing counter arguments: (1) Continental waived this argument when it failed to raise it in its original objections to the proposed judgment form that Schnitzer filed; (2) there are at least 30 prior decisions where courts have granted attorney fees under ORS § 742.061 after an action brought in federal court; and (3) Continental is precluded from raising this argument because of the principles of judicial estoppel. (Pls.' Reply [471] at 2–9.)

Schnitzer's first argument is a very weak argument in favor of waiver. The Judgment submitted by Schnitzer that I signed states that "[n]othing herein shall be construed to limit or abridge Schnitzer's right under ORS 742.061 to the recovery of its attorney's fees in future proceedings ..." (Judgment [458] at 6 .) While this phrase certainly suggests that Schnitzer will eventually be

awarded attorney fess pursuant to this statute, Continental reasonably could have believed that an objection to the form of a judgment was not the proper time to raise arguments as to the applicability of a fee shifting statute—it is not unreasonable to think that such an objection would be better placed in an objection to the fee petition. I find that waiver is inappropriate in this case and reject it as a basis for disposing of Continental's argument against the application of ORS § 742.061.

 **\*4**  I also reject Schnitzer's second argument that because 30 prior federal courts have awarded fees in the past under ORS § 742.061 that I must therefore follow suit and award fees as well. (Pls.' Reply [471] at 8–9.) As Continental points out, none of those prior cases ever considered the argument that Continental now raises. (Defs.' Opposition [464] at 7 n. 4.) Because none of these cases dealt with the argument that Continental now makes, these 30 cases are of little to no precedential value in deciding the argument before me.

Schnitzer's third argument that I reject is that the principles of judicial estoppel apply to this argument. The principles of judicial estoppel prevent a party from gaining an advantage by taking one position at an early stage of the proceedings, and then seeking to gain a second advantage at a later stage of the proceedings by taking a second position that is incompatible with the first. *See Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 600 (9th Cir.1996). In determining whether judicial estoppel applies, courts generally consider 3 factors: (1) whether the party's later position is clearly inconsistent with the first; (2) whether the party succeeded in persuading a court of the earlier position; and (3) whether the party would gain an unfair advantage or impose an unfair disadvantage on its opponent if allowed to argue the second position. *New Hampshire v. Maine,* 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). I do not believe that the principles of judicial estoppel apply in this case. The principles of judicial estoppel exist to prevent parties from manipulating courts, and that is not what I believe is going on here. While it is true that Continental has itself received attorney fees awards pursuant to ORS § 742.061 for cases held in federal court, I do not believe that that is very strong evidence that Continental is trying to manipulate the court in making an argument against the applicability to this statute in this case. Continental was not seeking to defend itself from the application of ORS § 742.061 in those previous cases, and therefore had no motivation to think of creative or complex arguments as to why that statute might not apply. Continental has never taken an inconsistent position to the one it takes now with regards to ORS § 742.061 at an early stage of these proceedings. In addition, nothing in the position that Continental is now taking with regards to ORS § 742.061 creates an unfair advantage for Continental or unfair disadvantage for Schnitzer in dealing with this fee petition. I therefore find that judicial estoppel should not apply to this argument.

Schnitzer makes one final argument in favor of rejecting Continental's argument that ORS § 742.061 should not apply in this case based on *Erie* principles that I adopt in part. I believe that the *Erie* doctrine together with good public policy dictate that ORS § 742.061 should apply in this case. If I were to find that ORS § 742.061 was not applicable to this case, it would lead to the strange result that a federal court in Oregon sitting in diversity and an Oregon state court, applying the same Oregon law, would reach different results about whether attorney fees were available or not. Federal courts across the country applying ORS § 742.061 would look the same (i.e. would not award attorney fees), but a federal court in Oregon and a state court in Oregon would not. This result would also seem to stifle the stated purpose of ORS § 742.061 which is "is 'to encourage the settlement of claims and to discourage the unreasonable rejection of claims by insurers.' " *See Axis Surplus Ins. Co. v. Lebanon Hardboard, LLC,* No. CV 07–292–MO, 2009 U.S. Dist. LEXIS 15754, at \*7, 2009 WL 490008 (D.Or. Feb. 26, 2009) (internal citations omitted). Parties would be able to get around this stated purpose by merely removing a case to federal court.

 **\*5**  On the other hand, if I were to find that ORS § 742.061 did apply in this case because I determine that a federal court in Oregon is a court "of" Oregon, it would lead to the strange result that a federal court in Oregon sitting in diversity and a federal court in a foreign state sitting in diversity, both applying Oregon law, would reach a different result as to whether or not attorney fees are available. One would be a court "of" Oregon and the other would not. However, it would result in the federal court in Oregon and the Oregon state court reaching the same result. This seems like the proper result because it will avoid the intrastate forum shopping that *Erie* is intended to prevent and it would support the stated purpose of this statute by not creating an easy backdoor to thwart any impact it might have on encouraging settlements or discouraging unreasonable rejections of insurance claims.

I do not believe that this is an easy argument to deal with. Continental makes an interesting and compelling argument that linguistically this statute does not apply to this case. However, given that its argument is based on linguistics alone, I believe that the proper result in this case is the one that reduces intrastate forum shopping and supports the stated purpose of the statute. Therefore, I find that ORS § 742.061 is applicable to this case.

## II. *Appropriate Hourly Rates*

Having determined that ORS § 742.061 does in fact mandate an award of attorney fees in this case, I must now determine what is a reasonable attorney fees award. Pragmatically, there are two main components in any attorney fees award: (1) determining whether or not the hourly rates claimed by the attorneys and their staff are reasonable; and (2) determining whether or not the total number of hours claimed by the attorneys and their staff is reasonable. ORS § 20.075 contains several factors that are relevant to determining the appropriate hourly rate for each timekeeper. The most relevant factors are those that require the court to consider the complexity of the case, the rates charged in the locality for similar legal services, the time limitations imposed by the client or the case, and the experience, reputation, and ability of the attorney performing the services. (ORS § 20.075(2).) Continental claims that rates sought by Schnitzer for each one of its timekeepers are unreasonably large for the Portland market. (Defs.' Opposition [464] at 11–12.) I take up the reasonableness of each timekeeper's hourly rates below.

### A. *Joan Snyder*

Ms. Snyder is a partner at Stoel Rives. Schnitzer's fees expert, David Markowitz, believes that $560 per hour is a reasonable billing rate for Ms. Snyder. (Markowitz Decl. [452] at 2.) Mr. Markowitz provides no support for this rate other than stating that he believes it to be reasonable given Ms. Snyder's experience, skills, and reputation in the area of environmental law. *Id.* While I normally would not view this as a sufficient basis to justify a claimed billing rate, Continental makes no objection to Ms. Snyder's billing rate despite making rather detailed objections to every other timekeepers' hourly rate. I therefore find that it is appropriate to use $560 per hour as the 2014 billing rate for Ms. Snyder. For the years prior to 2014, I adopt the rates suggested by Mr. Markowitz in the table he attached to his declaration. (*Id.* Ex. 3.)

### B. *Scott Kaplan*

*6 Mr. Kaplan is also a partner at Stoel Rives. Mr. Markowitz opines that $480 per hour is a reasonable billing rate for Mr. Kaplan. (*Id.*) Mr. Markowitz goes into much more detail regarding his determination of Mr. Kaplan's reasonable hourly rate. Mr. Markowitz consulted both the Oregon State Bar 2012 Economic Survey ("Bar Survey") and the 2014 Morones Survey ("Morones Survey"). (*Id.* at 2.) According to the Bar Survey, the 95th percentile rate for all attorneys admitted to practice 21 to 30 years is $470 per hour and the 95th percentile rate for business/corporate litigation attorneys is $450. (*Id.*) According to the Morones Survey, the average hourly rate for an attorney with 30+ years of experience is $448 per hour. (*Id.*)

Mr. Kaplan has 25 years of experience as a corporate litigator. Without telling us how or why Mr. Kaplan's skills are above average, Mr. Markowitz argues that Mr. Kaplan's above average experience and skill warrant treating him as an attorney with 30+ years of experience. Assuming that I chose to do that, Mr. Markowitz argues that by applying what he believes to be reasonable growth rates to the two surveys rates, $480 per hour is a reasonable hourly rate for Mr. Kaplan's work on this case.

Continental argues that this rate is too high. Continental's fees expert, William Stockton, opines that none of the partners in this case should be able to charge an hourly rate that exceeds $400. (Stockton Decl. [467] at 8.) Mr. Stockton bases his opinion on the Bar Survey and his own anecdotal experience of the Portland market. (*Id.*)

Given the evidence that I have before me, I find that a reasonable hourly rate for Mr. Kaplan in 2014 is $480. In reaching this number, I did not determine that Schnitzer's expert was more credible than Continental's. The parties presented me with a battle of their experts' subjective opinions without any objective way to choose between the two. What tipped the scale in Schnitzer's favor was the fee schedule that Mr. Kaplan attached to his declaration in support of the fees petition that detailed what rates Stoel Rives actually charged its clients in the relevant years. (Kaplan Decl. [450] Ex. 2.) Mr. Markowitz's suggested hourly

rates for the years 2010 to 2014 track the rates that Stoel Rives was actually charging its other clients for Mr. Kaplan's time. (Markowitz Decl. [452] Ex. 3.) For the years prior to 2014, I adopt Mr. Markowitz's suggested rates for Mr. Kaplan.

### C. *Crystal Chase*

For the same reasons that I adopted Mr. Markowitz's suggested rates for Mr. Kaplan, I adopt the rates set out in his table for Ms. Chase as well. (*Id.* Ex. 3.)

### D. *John Iole and Joseph Montgomery*

Mr. Iole and Mr. Montgomery are partners at Jones Day. Mr. Markowitz opines that $619 per hour is a reasonable billing rate for someone of similar experience and skill as Mr. Iole or Mr. Montgomery. (*Id.* at 5.) Mr. Markowitz only relies on the Morones Survey in making this determination. (*Id.*) Mr. Iole's current billing rate is $727.50 per hour and Mr. Montgomery's is $921.50 per hour. (Iole Decl. [451] Ex. F.) Mr. Markowitz points to the Morones Survey that shows that the 2012 average billing rate for the 15 attorneys with the highest rates in Oregon was $569 per hour. (Markowitz Decl. [452] at 5.) Given the data that has been collected so far, Mr. Markowitz projects that that number will rise to $619 for 2014. (*Id.*) Mr. Markowitz believes that Mr. Iole's and Mr. Montgomery's individual experiences on other large insurance cases justifies them receiving the highest of rates available in the Oregon market. (*Id.*) Continental, through Mr. Stockton, repeats the same arguments to lower this rate to $400 as it did for Mr. Kaplan. (Stockton Decl. [467] at 8.)

  **\*7** I find that the rates charged by Mr. Iole and Mr. Montgomery outside of Oregon, together with their extensive background in major insurance litigation, justify adopting $619 per hour as the appropriate 2014 billing rate for Mr. Iole and Mr. Montgomery. I disagree, however, with Mr. Markowitz that for 2010 up to the present $619 is the proper reasonable rate. In 2010, Mr. Iole's hourly rate was $625, and Mr. Montgomery's was $775. (Iole Decl. [451] Ex. F.) That means from 2010 until 2014, Mr. Iole's and Mr. Montgomery's hourly rates increased 16.4% and 18.9% respectively. I choose to take a conservative approach to calculating attorney fees and therefore order that the fee suggested by Mr. Markowitz for 2010 be decreased by 18.9% and then increased each year at an average growth rate of roughly 4.4%. I find that the appropriate reasonable rate for the years 2010 to 2014 respectively are $521, $544, $568, $593, and $619.

### E. *Rebekah Kcehowski*

Ms. Kcehowski is an attorney with Jones Day. She began working on this case as a senior associate, and in the course of the litigation she was made a partner. (Markowitx Decl. [452] at 5.) Mr. Markowitz opines that the respective rates for Ms. Kcehowski's work on this case from 2011 to 2014 are $360, $380, and $400. (*Id.* at 6.) Mr. Markowitz calculated these numbers from the Bar Survey and the Morones Survey in the same way as for earlier individuals discussed. He references the 2012 95th percentile rate for lawyers with equivalent experience ($428), and the 2012 75th percentile rate for business and corporate litigators ($360). (*Id.*) Mr. Markowitz says that we should use $360 as the appropriate rate without any arguments why, and then adjusts that rate upwards for inflation for the subsequent years. (*Id.*)

Continental agrees that I should look to the relevant 75th percentile amount, but argues that I should apply the 75th percentile rate of attorneys with 10–12 years of experience ($300) and not the 75th percentile rate for business and corporate litigators. (Stockton Decl. [467] at 11.) Like Mr. Markowitz, Mr. Stockton does not provide me with any substantial evidence for why I should choose one over the other.

I therefore, again, am left with Jones Day billing rates as the tie breaker. According to the billing rates table attached to Mr. Iole's declaration, for the years that Ms. Kcehowski was working on this case, Jones Day was billing clients in a range of $436.50 to $674.15 per hour from the years 2011 to 2014 for her time. (Iole Decl. [451] Ex. F.) Given that clients outside of Portland were willing to pay such a high rate for Ms. Kcehowki's time, I find that it is appropriate to give her the higher starting rate of $360 per hour for 2012. I therefore also adopt the suggested rates set out in Mr. Markowitz's table for Ms. Kcehowski. (Markowitz Decl. [452] Ex. 3.)

### F. *Johanna Miralles, Allison Parker, and Matthew Samburg*

Johanna Miralles, Allison Parker, and Matthew Samburg are, or were at the time of their work on this case, associates at Jones Day. I agree with Mr. Markowitz's argument that there is no obvious reason why these associates should bill at any lower of a rate than Ms. Chase's actual rates. (*Id.* at 6.) I therefore adopt her actual rates as the appropriate reasonable billing rates for these similarly situated associates.

### G. *Paralegal Rates*

 **\*8** Neither party makes very compelling arguments to support their proposed rate for paralegal work. Mr. Markowitz points out in his declaration that according to the Morones Survey, the average paralegal billing rate for 2012 for all paralegals in Portland was $173 per hour. (*Id.* at 7.) Given the absence of any compelling evidence showing that I should adopt Mr. Markowitz's suggested rate of $240–$250 or Mr. Stockton's suggested rate of $100–$125, I simply adopt the average rate from the Morones Survey as the appropriate rate-$173 per hour.

### H. *Support Personnel Rates*

Mr. Markowitz argues that the appropriate hourly rates for litigation technology assistants and for production assistants are $140 per hour and $80 per hour respectively. (*Id.* at 7.) These numbers are purely derived from Mr. Markowitz's personal experiences. (*Id.*) Mr. Stockton, without citing any authority, simply states that he thinks these fees should not be recoverable at all. (Stockton Decl. [467] at 11–12.) I disagree with Mr. Stockton, and therefore find, given no alternative proposed rates, that the appropriate rates to use for these timekeepers are $140 for litigation technology assistants and $80 for production assistants.

## III. *Application of ORS § 20.075 Factors*

Having determined what the appropriate hourly rate for each time keeper is, I now turn to determining the appropriate number of hours that should be billed on this case. ORS § 20.075(2) requires me to consider the relevant factors in subsections (1) and (2) in determining this value. The parties briefed arguments on what they believe to be the relevant sections. I take up those arguments below. I conclude that Schnitzer's number of hours worked on this case is reasonable.

### A. *ORS § 20.075(1)(a): The Conduct of the Parties*

Schnitzer makes a lot of the fact that it won on all of its claims at trial and therefore it should get all the fees it asks for. (Petition for Fees [449] at 6–7.) I agree with Continental, however, that this factor has little to do with the size of the fee award in this case, and therefore does nothing to advance Schnitzer's argument. The fact that Schnitzer won on all of its claims has little probative value in determining whether or not the total time its lawyers spent winning those claims was reasonable.

### B. *ORS § 20.075(1)(b): The Objective Reasonableness of the Claims, and Defenses Asserted by the Parties*

Again, I find that this favor does not cut in either party's favor. Schnitzer argues that the fact that the jury took only a few hours to deliberate and award Schnitzer everything it had asked for somehow evidences that Continental's defenses at trial were objectively unreasonable. (Petition for Fees [449] at 9.) I agree with Continental that such an inference from those facts would be inappropriate. (Defs.' Opposition [464] at 14.) The fact that a party loses at trial on certain claims or defenses does not without more imply that those claims or defenses were objectively unreasonable. I believe that both parties' respective claims and defenses were reasonable, and therefore find that this factor is neutral as to the ultimate fee award.

### C. *ORS § 20.075(1)(c) & (d): Effect of Award on Good Faith Claims and Defenses, and on Meritless Claims and Defenses in Future Cases*

**\*9** Schnitzer correctly states that the purpose of ORS § 742.061 "is 'to encourage the settlement of claims and to discourage the unreasonable rejection of claims by insurers.' " *See Axis Surplus Ins. Co.,* 2009 U.S. Dist. LEXIS 15754, at \*7, 2009 WL 490008 (internal citations omitted). Awarding Schnitzer all of its requested attorney fees would serve this purpose.

Continental first argues that it did not pursue any meritless defenses and so this factor is inapplicable. It then argues that an award of all the fees sought by Schnitzer would deter even good faith defenses by similarly situated defendants in the future. (Defs.' Opposition [464] at 17–18.)

I agree with Continental that subsection (d) is not relevant to this case because Continental did not pursue any meritless defenses. It did whittle down the number of defenses it would present at trial over the course of the litigation, but that is a fairly common practice as cases are refined and rethought throughout the discovery process. I do, however, find that subsection (c) weighs quite heavily in Schnitzer's favor given the stated purpose of ORS § 746.061. Granting attorney fees in any amount imposes a cost on defendants who present good faith defenses at trial but who ultimately lose, and therefore any amount of attorney fees deters all defendants from asserting any and all good faith defenses. The Oregon Legislature has determined that this is an appropriate burden to place on defendant insurers in order to meet its public welfare goals. I have no power to second guess that decision. I therefore find that ORS § 20.075(1)(c) weighs in favor of granting Schnitzer all of its reasonable attorney fees because it helps accomplish the stated purpose of ORS § 742.061.

### D. *ORS § 20.075(1)(e): Objective Reasonableness of Parties' Diligence*

Schnitzer argues that it created and followed a litigation plan with the two firms that it hired, which led to efficient and non-duplicative legal work on this case. (Petition for Fees [449] at 7–9.) Continental argues that Schnitzer's attorney billing sheets tell a different story. Continental, however, fails to sufficiently support its position. Continental merely identifies 8 different examples of what it believes to be excessive or duplicative work, and it claims, without identifying them, that there are many more such cases of overbilling. (Defs.'s Opposition [464] at 15–16.) Continental fails to tell me how much time these tasks should have taken or identify exactly where the duplicative billing occurred. I reviewed the Schnitzer billing sheets that Continental attached to Mr. Sommermeyer's declaration, but I fail to see any obvious examples duplicative billing. (Sommermeyer Decl. [466] Ex. G.) Continental tells me that these are just a few examples and that I should now go and find more. (*Id.* at 3; *see also* Defs.' Opposition [464] at 16.) Continental apparently believes that its time is more valuable than mine, and therefore leaves the task of combing through the record to find evidence supporting their arguments up to me. I disagree that its time is more valuable than mine. Because Continental has failed to provide adequate evidence in support of its position that Schnitzer's attorneys engaged in excessive billing and duplicative work, I find that this factor weighs in Schnitzer's favor.

### E. *ORS § 20.075(1)(f): Objective Reasonableness of the Parties in Pursuing Settlement*

**\*10** I find that this factor is neutral as to each party's position. The parties tell conflicting stories without providing any great evidence to sort out all of the details. Continental argues that it attempted on numerous occasions to get Schnitzer to agree to meet with a mediator to attempt to resolve their dispute outside of court. (Defs.' Opposition [464] at 18.) Continental claims that Schnitzer refused to participate unless Continental bore the burden of all the costs related to mediation. (Gottlied Decl. [465] Ex.s 1–7.) Schnitzer responds that the reason it refused to engage in mediation unless Continental bore all of the costs was because previous attempts at settlement had shown that Continental had no real desire to settle, but rather just sought to force its "settlement terms" down Schnitzer's throat. (Pls.' Reply [471] at 19.) Nothing in Continental's briefing rebuts Schnitzer's story, but Schnitzer has not provided much evidence to support its story. Given the state of the evidence, I cannot find that either side was more or less reasonable than the other. I therefore find that this factor weighs equally in each party's favor.

### F. *ORS § 20.075(2)(a): Time and Labor Required / Novelty and Difficulty*

I have considered the arguments made by each party and find that this factor is neutral as to each party's position. Each party makes a few conclusory statements that this case was either very complex or a simple breach of contract case. At its most fundamental level, this was a simple breach of contract case. However, almost any case characterized in its most fundamental

form can look quite basic. This case took nearly 4 years to run its course. It was something more than a simple breach of contract case. But whether or not it was as complex as Schnitzer argues it was is unclear given the lack of evidence that they have presented. Given the state of the evidence, I find that this factor weighs equally between the parties.

### G. *ORS § 20.075(2)(d): Amount Involved and the Result Obtained*

It is undisputed that Schnitzer won on all claims, receiving all the monetary relief that it sought: roughly $8,600,000 in presently unpaid defense costs plus an additional $2,400,000 in prejudgment interest. I find this to be an odd factor because it does not seem to inform a finding of how much the attorneys are worth paying, but rather just a finding that they are in fact worth paying some amount greater than zero because they won the case. Nevertheless, given that this is a factor that I must consider, it undoubtedly weighs in Schnitzer's favor.

## CONCLUSION

For the foregoing reasons, I find that all of the factors from ORS § 20.075 that I am required to consider are either irrelevant, neutral or weigh in favor of granting Schnitzer's petition for fees—both the fees it claims for litigating the case, and the fees it claims for preparing its fee petition. I order that the parties recalculate the total fees owed to Schnitzer based on the hours previously claimed, but with the rates for each timekeeper that I set out above. I will then review this calculation and award it as the reasonable attorney fees award in this case. Schnitzer's Petition for Fees [449] is GRANTED according to the foregoing instructions.

**\*11**  IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6063976

---

End of Document                                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.